UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
GREGORY GORDON, KIN VASQUEZ and
KENNETH KIDD,

                           Plaintiffs,

      - against –

THE COUNTY OF ROCKLAND and REV. TERESA
DARDEN CLAPP, in her individual and official capacity
as a Correction Officer employed by the County of Rockland,

                        Defendants.

-----------------------------------------------------------------------X

**MEMORANDUM OF LAW**

Civil Action No. 10 Civ. 1549
(RPP)

---

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

---

**TARSHIS, CATANIA, LIBERTH
MAHON & MILLIGRAM, PLLC**
*Attorneys for Defendants*
**THE COUNTY OF ROCKLAND and
REV. TERESA DARDEN CLAPP**
One Corwin Court, P.O. Box 1479
Newburgh, New York 12550
Tel. No. 845-565-1100

Of Counsel:

Richard M. Mahon, II, Esq.
Rebecca Baldwin Mantello, Esq. (on the brief)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES............................................................................ii-iv

PRELIMINARY STATEMENT.......................................................................1

FACTUAL BACKGROUND.............................................................................2

POINT I

PLAINTIFFS FAILED TO EXHAUST THEIR ADMINITRATIVE REMEDIES...............6

POINT II

THE COUNTY OF ROCKLAND IS ENTITLED TO SUMMARY JUDGMENT AS
PLAINTIFFS CANNOT ESTABLISH A CUSTOM OR POLICY OF
UNCONSTITUTIONAL CONDUCT....................................................................8

POINT III

PLAINTIFFS' FIRST AND FIFTH AMENDMENT CLAIMS FAIL AS A MATTER
OF LAW AS PLAINTIFFS ARE UNABLE TO ESTABLISH THAT DEFENDANTS
SUBSTANTIALLY BURDENED THEIR CONSTITUTIONAL RIGHTS.......................12

POINT IV

PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS FAIL AS A MATTER
OF LAW AS PLAINTIFFS WERE AFFORDED A REASONABLE OPPORTUNITY
TO PURSUE THEIR FAITH............................................................................20

POINT V

PLAINTIFFS' EIGHTH AMENDMENT CLAIMS FAIL AS A MATTER OF LAW
AS PLAINTIFFS ALLEGED INJURIES ARE NOT "SUFFICIENTLY SERIOUS.".........22

POINT VI

PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DISMISSED AS A MATTER
OF LAW...................................................................................................24

POINT VII

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER
OF LAW DISMISSING PLAINTIFFS' COMPLAINT IN ITS ENTIRETY.....................25

CONCLUSION...........................................................................................27

i

# TABLE OF AUTHORITIES

## Cases

Abdur-Raqiby v Erie County Med. Ctr., 536 F Supp 2d 299 (WD NY 2008)............................7

Allen v Toombs, 827 F2d 563 (9th Cir 1987)...................................................21

Anderson v Liberty Lobby, Inc., 477 US 242 (1986)...........................................25

Balabin v Scully, 1986 WL 5378 (SD NY 1986)................................................24

Boomer v Irvin, 963 F Supp 227 (WD NY 1997)...............................................15

Cancel v Mazzuca, 205 F Supp 2d 128 (SD NY 2002).......................................14, 17

Celotex Corp. v Catrett, 477 US 317 (1986)...................................................25

Cruz v Beto, 405 US 319 (1972)...............................................................20

Davidson v Davis, 1995 WL 60732 (SD NY 1995)......................................11, 19, 20

Dawes v Walker, 239 F3d 489 (2d Cir 2001), abrogated on other grounds Swierkiewicz v Sorema, N.A., 534 US 506 (2002)..........................................22, 23

Evans v Albany County Correctional Facility, 2009 WL 1401645 (ND NY 2009)...............14

Farmer v Brennan, 511 US 825 (1994)..........................................................22

Ford v McGinnis, 352 F3d 582 (2d Cir 2003)..................................................13

Gill v DeFrank, 2000 WL 897152 (SD NY 2000), aff'd 8 Fed Appx 35 (2d Cir 2001).......14, 17

Guarneri v Hazzard, 2010 WL 1064330 (ND NY 2010)................................11-13, 18-23

Green v City of New York Dept. of Corrections, 2008 WL 2485402 (SD NY 2008)..............23

Hawkins v New York State Dept. of Correctional Servs., 2008 WL 2019655 (ND NY 2008). ..................................................................................15, 17

Haywood v Drown, 129 S Ct 2108 (2009)........................................................25

Johnson v Newton, 2007 WL 778421 (ND NY 2007)......................................14, 21, 22

Johnson v Rowley, 569 F3d 40 (2d Cir 2009)....................................................7

Jones v Bock, 549 US 199 (2007)..................................................................7

Joshua v New York City Dept. of Corrections, 1987 WL 9199 (SD NY 1987)...................13

Knight v United States Fire Ins. Co., 804 F2d 9 (2d cir 1986), cert. denied
480 US 932 (1987)...................................................................................26

Lipton v County of Orange, NY, 315 F Supp 2d 434 (SD NY 2004)............................8-10

Mateo v Fisher, 682 F Supp 2d 423 (SD NY 2010)...........................................22, 23

Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 US 574 (1986)............................26

Matter of Ferguson, 55 Cal 2d 663 (Cal 1961), cert. denied 368 US 864 (1961)...................18

May v Donneli, 2009 WL 3049613 (ND NY 2009)............................................24, 25

McAllister v New York City Police Dept., 49 F Supp 2d 688 (SD NY 1999).......................9

McEachin v McGuinnis, 357 F3d 197 (2d Cir 2004)...................................................14

Muhammad v City of New York Dept. of Corrections, 904 F Supp 2d 161 (SD NY 1995)
...................................................................................................11, 19, 20

Myers v Barrett, 1997 WL 151770 (ND NY 1997)...........................................21

Odom v Dixion, 2008 WL 466255 (WD NY 2008).............................................16, 17

Patterson v Coughlin, 761 F2d 886 (2d Cir 1985), cert. denied 474 US 1100 (1986).............12

Persad v Savage, 2004 WL 1570286 (WD NY 2004), adopted 2004 WL 1858140
(WD NY
2004)......................................................................................15

Petty v Goord, 2008 WL 2604809 (SD NY 2008)...................................................23

Porter v Nussle, 534 US 516 (2002)...................................................................7

Pressley v Green, 2004 WL 2978279 (SD NY 2004)...........................................8, 10

Ramsey v Goord, 661 F Supp 2d 370 (WD NY 2009)...........................................12, 13

Riccuiti v New York City Tr. Auth., 941 F2d 119 (2d Cir 1991)................................8, 10

Salahuddin v Goord, 467 F3d 263 (2d Cir 2006)...................................................13

iii

Salahuddin v Perez, 2006 WL 266574 (SD NY 2006)..............................................21

Sanchez v Turner, 2002 WL 1343754 (SD NY 2002), aff'd on other grounds
378 F3d 133 (2d Cir 2004)..........................................................24

Shabazz v Pico, 994 F Supp 460 (SD NY 1998)..................................................23

Shakur v Schriro, 514 F3d 878 (9th Cir 2008)...............................................21

Show v Patterson, 955 F Supp 182 (SD NY 1997)..............................................23

Sorlucco v New York City Police Dept., 971 F2d 864 (2d Dept 1992).............................8

Sostre v McGinnis, 334 F2d 906 (2d Cir 1964), cert. denied 379 US 892 (1964).............11, 18

Sutton v Tompkins County, 617 F Supp 2d 84 (ND NY 2007).......................................12

Tafari v Annets, 2008 WL 2413995 (SD NY 2008), adopted by 2008 WL 94494722
(SD NY 2008), aff'd 363 Fed Appx 80 (2d Cir 2010), cert. denied
2010 WL 1652961 (2010)...........................................................15, 17

Thompson v State of New York, 2001 WL 636432 (SD NY 2009)...................................25

Troy v Kuhlmann, 1999 WL 825622 (SD NY 1999)..............................................14, 17

United States v Al-Marri, 239 F Supp 2d 366 (SD NY 2002).......................................7

Wagnoon v Gatson, 2001 WL 709276 (SD NY 2001).............................................13, 14, 17

West v City of New York, 1996 WL 240161 (SD NY 1996)........................................24

White v New York State Dept. of Correctional Servs., 2009 WL 860354 (SD NY 2009).........25

Williams v Weaver, 2006 WL 2794417 (ND NY 2006).............................................15

Young v Coughlin, 1998 WL 32518 (SD NY 1998), aff'd 182 F3d 902 (2d Cir 1999)...........23

Young v Scully, 1993 WL 88144 (SD NY 1993)...............................................15, 17

**Statutes**

42 USC § 1983...........................................................................8, 12
42 USC § 1997e -- Prison Litigation Reform Act of 1995........................................6
Fed. R. Civ. P. 56......................................................................25
N.Y. Const. Art I, §§ 3, 5, 6, 11..........................................................24
N.Y. Correction Law § 24................................................................25

## PRELIMINARY STATEMENT

Defendants, County of Rockland ("the County") and Rev. Teresa Darden Clapp ("Rev. Clapp") (collectively referred to as "Defendants"), move for an order granting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiffs, Gregory Gordon, Kin Vasquez (upon information and belief, the plaintiffs' name is "Kim Vasquez"), and Kenneth Kidd, have filed a 42 USC §1983 claim alleging violations of their rights under the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution, as well as the parallel rights of the New York State Constitution.

Submitted in support of Defendants' motion are the affidavits of Rev. Clapp, and Joseph Conjura (Captain of the Rockland County Sheriff's Department), the affirmation of Richard M. Mahon, II (with exhibits annexed) and this comprehensive Memorandum of Law.

The complaint was filed on February 24, 2010 [see Ex. "A"].[1]  Issue was joined by the filing of Defendants' answer with affirmative defenses on May 17, 2010 [see Ex. "B"].  Simply stated, Plaintiffs claim that between March 26, 2007 and May 7, 2007, Defendants engaged in a pattern of unconstitutional conduct, policies and practices that abridged the plaintiffs' religious freedoms causing plaintiffs to sustain severe psychological trauma [see Ex. "A"].

Plaintiffs commenced this lawsuit seeking damages for the alleged violation of their constitutional rights to freedom of religion and deprivation of liberty without due process of law. [see Ex. "A"].  These claims are based upon plaintiff's allegation that between March 26, 2007 to May 7, 2007 (1) Rev. Clapp repeatedly and continuously distributed two tracts; (2) Rev. Clapp refused to permit plaintiffs to use their Korans; (3) Muslim services were held in the "barber shop" which hindered and prevented prayer service; (4) the County had a policy, both express and/or implied, to deny the religious rights of plaintiffs; (5) the County, despite its knowledge of

---

[1] All Exhibits referenced herein are annexed to the affidavit of Counsel submitted herewith.

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

the conduct of Rev. Clapp, permitted her to act as plaintiffs' religious director; (6) the County failed to hire anyone to lead Muslim services in an effort to discourage and hinder said religious observance; (7) non-Muslim inmates began altercations with Muslim inmates, including plaintiffs; and (8) as a result of the distribution of the two tracts, non-Muslim inmates called Muslim inmates' God [Allah] the devil, causing plaintiffs to sustain severe psychological trauma [see Ex. "A"].  Defendants specifically deny these allegations [see Ex. "B"].

## FACTUAL BACKGROUND

### A.   Distribution of Chick Publication Tracts.

Rev. Clapp is an ordained minister who has been employed by the County of Rockland in the capacity of Jail Chaplin since 1994 [see Clapp Aff.].  During the relevant time period, Rev. Clapp's responsibilities included the distribution of religious materials and literature to the inmate population [see Clapp Aff.].  Over the years, Rev. Clapp distributed various tracts from Chick Publications, which were sent to her parish, without incident or complaint [see Clapp Aff.].

On or about March 26, 2007, Rev. Clapp placed a variety of tracts published by Chick Publications on tables in Housing Unit A and Housing Unit E of the Rockland County Correctional Facility (hereinafter referred to as the "the Jail") [see Clapp Aff.].  Unbeknownst to her, among those various tracts, there were one or more copies of certain tracts entitled "Men of Peace?" and/or "Allah has no Sons" (hereinafter referred to as "the subject tracts").  Rev. Clapp had not seen nor read the subject tracts prior to placing the Chick Publications on the tables in the housing units [Clapp Aff.].

Just one day later, on March 27, 2007, inmate Dorian Epps (hereinafter referred to as "Inmate Epps") spoke with Rev. Clapp spoke regarding the tracts content [see Clapp Aff.; Ex.

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12651  •  (845) 565-1100

"G"]. Rev. Clapp apologized to inmate Epps and promptly collected all Chick Publication tracts that she could locate, including the subject tracts [see Clapp Aff.; Ex. "G"].

Thereafter, on March 28, 2007, inmate Epps spoke with Captain Joseph Conjura (hereinafter referred to as "Captain Conjura") to express his concerns about the subject tracts and provided him with a copy of the tract entitled "Men of Peace?" [see Ex. "C;" Ex. "G"]. Subsequently, Captain Conjura confronted Rev. Clapp about the subject tracts and instructed her to remove all Chick Publications, including the subject tracts from the inmate population, and prohibited Rev. Clapp from further distributing any tracts from Chick Publications in the Jail [see Clapp Aff.; Conjura Aff.; Ex. "G"]. No inmate, including plaintiffs, filed a formal grievance with the Rockland County Sheriff's Department regarding this matter [see Conjura Aff.].

As a result of the distribution of the subject tracts, Rev. Clapp was suspended with pay on April 12, 2007 [see Ex. "F;" Clapp Aff.]. In addition, an investigation, led by Captain Conjura, was conducted by the Rockland County Sheriff's Department on April 16, 2007 [see Ex. "H"]. According to reports by other inmates, including the plaintiffs, inmate Lydell Watts, a Muslim, and inmate Rakeem Whatley, a Catholic, engaged in a verbal dispute regarding the content of the tracts sometime between March 26, 2007 and April 16, 2007 [see Ex. "H"]; however, no other incidents were reported [see Conjura Aff.].

As the result of this incident, a disciplinary proceeding, pursuant to Civil Service Law §75 was commenced against Rev. Clapp and Rev. Clapp's suspension was continued; however her suspension was without pay [see Ex. "I;" Ex. "J"].

The allegations raised by the Rockland County Sheriff's Department were essentially that Rev. Clapp committed either (1) misconduct and dereliction of duty by intentionally and

3

willfully distributing inflammatory religious material in the Rockland County Jail in an attempt to proselytize; (2) incompetence by being oblivious to the danger that the content of the tracts created; or (3) negligence because she did not read or inspect the subject tracts before she distributed them to the inmate population [see Ex. "J"].

After a three day disciplinary hearing, Arbitrator Paul Bailey determined that there was no evidence to support the County's allegations that Rev. Clapp acted intentionally or maliciously or that her actions were the result of incompetence [see Ex. "K"].  Arbitrator Bailey determined that Rev. Clapp was negligent in failing to read or inspect the subject tracts prior to their distribution to the inmate population [see Ex. "K"].

Subsequently, on September 10, 2007, Rev. Clapp was permitted to return to work [see Ex. "L"].  However, she was ordered to cease and desist from supervising any other religious leaders that enter the Rockland County Jail and was stripped of her responsibilities over all religious matters that pertained to the Jail; those responsibilities were and continue to be handled by Captain John C. Liska [see Ex. "M"].

**B.**      **Jail policy on distribution of the Koran to Muslim inmates.**

Pursuant to the Rules and Regulations of the Jail, inmates are permitted to have in their possession written religious materials such as Bibles, Korans, and Torahs [see Ex. "D"].  The Corrections administration for the County, in consultation with other federal and state organizations, issued a policy regarding the Jail's distribution, through the jail commissary, of the "Noble Koran" publication [see Conjura Aff.].  It was determined by the Jail administration that the "Noble Koran publication" contained commentaries not found in other publications of the Koran, which would be inflammatory as they referred to Jihad, holy war and terrorism [see Conjura Aff.].  The Jail administration determined that the content of the "Noble Koran"

4

publication could incite violence and other disciplinary problems within the inmate population [see Conjura Aff.].  Therefore, it was decided that the "Noble Koran" publication would not be available for distribution through the Jail's commissary [see Conjura Aff.].

Rev. Clapp was not involved with this administrative decision.  Rev. Clapp was directed by her superior office, Captain Conjura, to purchase publications of the Koran for the Muslim inmate population that comported with this policy [see Conjura Aff. and Clapp Aff.].

Importantly, despite this policy, Muslim inmates could obtain and maintain in their possession the "Noble Koran" publication if it was provided to them from an outside source [see Conjura Aff.].

No inmate, including plaintiffs, filed a formal grievance with the Rockland County Sheriff's Department regarding this matter [see Conjura Aff.].

**C.    Muslim religious services within the Jail.**

The Jail does not have a designated Chapel for religious services [see Clapp Aff.; Conjura Aff.].  The Jail has four rooms that are used for Jail programs and religious services: Classroom, Multipurpose Room No. 2; Barber Shop; and Law Library [see Clapp Aff.; Conjura Aff.]. Multipurpose Room No. 2 was used by all religious groups within the Jail for religious services [see Clapp Aff.; Conjura Aff.].  During the relevant time period, March 26, 2007 through May 7, 2007, Rockland County Jail held Muslim prayer services, also known as "Ju'mah," every Friday from 12:30 until 2:30 in Multipurpose Room No. 2 [see Clapp Aff.; Conjura Aff.].  Neither Rev. Clapp nor Captain Conjura have any recollection of Muslim prayer services being held in the barbershop [see Clapp Aff.; Conjura Aff.].  However, the barbershop would only be used to conduct religious services if the Multipurpose Room No. 2 was not available because some other Jail program was being conducted at that time.  This holds true for

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

all religious groups using the room [see Clapp Aff.; Conjura Aff.].  No inmate, including plaintiffs, filed a formal grievance with the Rockland County Sheriff's Department regarding this matter [see Conjura Aff.].

**D.    Hiring of Imam.**

The County regularly engaged the services of volunteer Imams to facilitate Muslim religious services to the Muslim inmate population [see Conjura Aff.].  During the relevant time period, the Rockland County Sheriff's Department was unable to locate an individual who could provide volunteer imam services [see Conjura Aff.].  During the relevant time period, the Rockland County Sheriff's Department was unable to hire an Imam to provide services due to budgetary constraints [see Conjura Aff.].  Despite this fact, Muslim religious services continued uninterrupted and were facilitated, upon information and belief, by plaintiff Kenneth Kidd, as a spiritual leader among the Muslim inmate population [see Conjura Aff.].  From in or about May 2005 until the Fall of 2007, Imam Ronny Bourdeau provided volunteer services and facilitated Muslim prayer services [see Conjura Aff.].  However, in the Fall of 2007, Imam Bourdeau was unable to continue providing volunteer services to the Muslim inmate population [see Conjura Aff.].  Imam Paul Harris was engaged as a volunteer to facilitate Muslim religious services in or about the Fall of 2007 [see Conjura Aff.].  No inmate, including plaintiffs, filed a formal grievance with the Rockland County Sheriff's Department regarding this matter [see Conjura Aff.].

## POINT I

## PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES PRIOR TO SUIT.

As an initial matter, the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under

6

section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." In Porter v Nussle, 534 US 516 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits related to prison conditions. "The purpose of the exhaustion requirement is to improve prison administration, filter out frivolous claims, and clarify the contours of controversies for cases that are ultimately brought to court" (United States v Al-Marri, 239 F Supp 2d 366, 367 [SD NY 2002]). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (Johnson v Rowley, 569 F3d 40, 45 [2d Cir 2009], quoting Jones v Bock, 549 US 199, 211 [2007]). "In order to exhaust a claim 'prisoners must complete the administrative review process in accordance with the applicable procedural rules. Those procedural rules are 'defined not by the PLRA, but by the prison grievance process itself'" (Johnson v Rowley, 569 F3d at 45, quoting Jones v Bock, 549 US at 218 [internal citation omitted]).

Here, the County of Rockland has a formal inmate grievance policy which is in accordance with 9 NYCRR 7000 et seq (see Exhibit "D").   In addition, the Inmate Rules and Regulations set forth the grievance procedures for inmates (see Exhibit "E").

None of the plaintiffs filed a formal grievance with the Rockland County Sheriff's Department pursuant to the County's grievance policies or rules regarding any of their allegations (see Aff. Captain Conjura).  As plaintiffs have failed to exhaust their administrative remedies, their federal claims should be dismissed as a matter of law (see Johnson v Rowley, 569 F3d at 45; Abdur-Raqiyb v Erie County Med. Ctr., 536 F Supp 2d 299, 304 [WD NY 2008]; United States v Al-Marri, 239 F Supp 2d at 367).

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

## POINT II

### THE COUNTY OF ROCKLAND IS ENTITLED TO SUMMARY JUDGMENT AS PLAINTIFFS CANNOT ESTABLISH A CUSTOM OR POLICY OF UNCONSTITUTIONAL CONDUCT.

"Section 1983 applies to municipalities and other local government units. However, '[a] municipality may not be held liable in an action under § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior*'" (Lipton v County of Orange, NY, 315 F Supp 2d 434, 452 [SD NY 2004]). "In order to establish the liability of such defendants in an action under § 1983 for unconstitutional acts by such employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy (Riccuiti v New York City Tr. Auth., 941 F2d 119, 122 [2d Cir 1991]). "Though this does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." (id. at 123 [internal citation omitted]; see also Lipton v County of Orange, NY, 315 F Supp 2d at 453; Pressley v Green, 2004 WL 2978279 *5 [SD NY 2004][unreported decision]).

While "[c]onstitutional deprivations actionable under § 1983 may be 'visited pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels[,]'" . . . plaintiff must prove that the allegedly violative practice is 'persistent and widespread,' and that the 'actions of subordinate city employees' are 'so manifest as to imply the constructive acquiescence of senior policy-making officials'" (Lipton v County of Orange, NY, 315 F Supp 2d at 453, quoting Sorlucco v New York City Police Dept., 971 F2d 864, 870-871 [2d Cir 1992] [internal citation omitted]). Moreover, "'[c]onclusory allegations of a municipality's pattern or policy of unconstitutional behavior are

**TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC**
P.O. BOX 1479   •   NEWBURGH, N.Y. 12551   •   (845) 565-1100

insufficient to establish a *Monell* claim, absent evidence to support such an allegation'" (Lipton v County of Orange, NY, 315 F Supp 2d at 453, quoting McAllister v New York City Police Dept., 49 F Supp 2d 688, 705 [SD NY 1999]). "[F]or plaintiff's claims of custom or policy to survive summary judgment review, there necessarily must be evidence of the complained-of activity by defendants in similar circumstances outside the present case" (Lipton v County of Orange, NY, 315 F Supp 2d at 453)

Here, plaintiffs allege that the County violated their rights under § 1983 by permitting and tolerating a pattern and practice of abridgment of religious freedom and deprivations of liberty without due process of law by Correction Officers; and that the County has maintained a system of review of Correction Officers' conduct that is untimely and cursory as to be ineffective and which permits and tolerates the abridgment of religious freedom and deprivations of liberty without due process of law by Corrections Officers [see Ex. "A"].

The evidence before the Court establishes that the County did not have a custom or policy to deny the religious rights of plaintiffs. Rev. Clapp has worked for the County of Rockland at the Rockland County Jail in the capacity of Jail Chaplin since February 1994 [see Clapp Aff.]. Rev. Clapp routinely distributed religious literature and materials to the inmate population, including Chick Publication tracts, in accordance with her duties and responsibilities, without incident [see Clapp Aff.]. The distribution of the subject tracts was an isolated singular incident which occurred as the result of negligence on the part of Rev. Clapp [see Clapp Aff.; Ex. "K"]. Moreover, the distribution and circulation of the subject tracts occurred over a 2 to 3 day period and were promptly removed [see Clapp Aff.]. Within two weeks of the alleged incident, the Sheriff's Department conducted an investigation and suspended Rev. Clapp [see Conjura Aff.; Ex. "H;" Ex. "F"]. Subsequently, disciplinary charges were brought against Rev. Clapp

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479   •   NEWBURGH, N.Y. 12551   •   (845) 565-1100

and her suspension from work was extended and she did not receive her pay [see Ex. "I;" Ex. "J"]. Ultimately, it was determined by the arbitrator that Rev. Clapp acted negligently and she was suspended for 30 days without pay [see Ex. "K"]. Upon reinstatement to her position as Jail Chaplin, supervisory and all other responsibilities regarding religious matters were removed from Rev. Clapp's duties [see Clapp Aff.; Conjura Aff.; Ex. "M"]. This single incident, conducted by a subordinate employee, which was timely addressed by the Sheriff's Department does not constitute a custom or policy sufficient to establish a violation of plaintiffs' rights under §1983 (see Riccuiti v New York City Tr. Auth., 941 F2d at 123; Lipton v County of Orange, NY, 315 F Supp 2d at 453; Pressley v Green, 2004 WL 2978279 *5).

As more fully argued below, plaintiffs' remaining allegations that the County abridged their rights to religious freedom and deprived them of their liberty without due process by holding Muslim prayer services in the "barber shop;" not permitting plaintiffs use of the Koran; and not hiring an Imam to facilitate Muslim prayer services during a month and half long period do not constitute violations of plaintiffs constitutional rights.

As attested to by Captain Conjura and Rev. Clapp, the jail has four rooms available for jail programs [see Conjura Aff; Clapp Aff.]. During the relevant time period, Ju'mah services were held in Multipurpose Room No. 2 on Fridays from 12:30 to 2:30 [see Conjura Aff; Clapp Aff.]. In addition, the Jail offered a Muslim religious study group on Mondays from 8:00 p.m. to 10:00 p.m. [see Conjura Aff; Clapp Aff.]. Neither Captain Conjura nor Rev. Clapp has any knowledge or recollection of Ju'mah services being held in the barbershop [see Conjura Aff; Clapp Aff.]. However, Captain Conjura and Rev. Clapp also state that the barbershop would only have been used for religious services if no other room was available due to scheduling issues [see Conjura Aff; Clapp Aff.]. Based on the foregoing, the County did not have a custom

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

or policy of abridging the plaintiffs' rights by alleging holding Ju'mah services in the barbershop (see Point III, C, infra).

Plaintiffs were not denied use of the Koran. The Inmate Rules and Regulations provide that "Inmates are permitted to have in their possession written Religious materials such as Bibles, Korans, and Torahs" [see Exhibit "D" at page 7]. The County had a policy which dictated that the jail would not purchase copies of the "Noble Koran" through the jail commissary [see Conjura Aff.]. This policy was instituted to maintain discipline within the jail as it was determined by corrections administration that the "Noble Koran" publication contained commentary that was inflammatory [see Conjura Aff.]. However, Muslim inmates were permitted to use and the County would provide other translations of the Koran [see Conjura Aff.]. Rev. Clapp, in fact, provided the Koran to plaintiffs [see Clapp Aff.]. Moreover, inmates, including plaintiffs, could keep a Noble Koran in their possession if provided to them from another source [see Conjura Aff.]. Based on the foregoing, the County did not have a custom or policy designed to abridge plaintiffs' rights as a prison may circumscribe religious content in order to maintain discipline in the prison (see Point III, B, infra; Sostre v McGinnis, 334 F2d 906, 911 [2d Cir 1964], cert. denied 379 US 892 [1964]).

While the County had not hired an imam during the relevant time period, the County was under no affirmative duty to do so, so long as prisoners were afforded a reasonable opportunity to pursue their faith comparable to the opportunity afforded fellow prisoners Guarneri v Hazzard, 2010 WL 1064330, *18, 20 [ND NY 2010], citing Davidson v Davis, 1995 WL 60732, at *5-6 [SD NY 1995]; see also Muhammad v City of New York Dept. of Corrections, 904 F Supp 161, 189 [SD NY 1995]). Here, the County routinely engaged the services of volunteer imams to facilitate Muslim religious services; however, during the relevant time frame, a volunteer imam

11

was not available and due to budgetary constraints, the County was unable to hire an imam to provide services [see Conjura Aff.]. Nonetheless, prayer services continued and were, upon information and belief, facilitated by a Muslim inmate, plaintiff Kenneth Kidd, who identified himself as a spiritual leader among the Muslim inmate population [see Conjura Aff.; Ex. "H"]. Based on the foregoing, the County did not engage in a custom or policy of conduct designed to deprive plaintiffs of their constitutional rights and freedoms (see Point III, D, infra; Guarneri v Hazzard, 2010 WL 1064330, *18, 20)

## POINT III

### PLAINTIFFS FIRST AND FIFTH AMENDMENT CLAIMS FAIL AS A MATTER OF LAW AS PLAINTIFFS ARE UNABLE TO ESTABLISH THAT DEFENDANTS SUBSTANTIALLY BURDENED THEIR CONSTITUTIONAL RIGHTS.

Plaintiffs' claims arising under the First and Fifth Amendments fail as a matter of law because the plaintiffs cannot establish a substantial burden upon the exercise of their rights of religious freedom.

To recover under 42 U.S.C. §1983, a plaintiff must establish (1) deprivation or denial of a constitutional right (2) by a person acting under the color of state law (see Sutton v Tompkins County, 617 F Supp 2d 84, 92 [ND NY 2007], citing Patterson v Coughlin, 761 F2d 886, 890 [2d Cir 1985], cert. denied 474 US 1100 [1986]).

"It is well settled that an inmate may not be deprived of a protected liberty interest without due process of law" (Ramsey v Goord, 661 F Supp 2d 370, 394 [WD NY 2009]). "To articulate a claim under 42 UCS § 1983 alleging the violation of a liberty interest without procedural due process, an inmate must first establish he enjoyed a protected liberty interest" (id. at 394-395 [citation omitted]). "Inmates' protected liberty interests are typically derived from two sources, the Fourteenth Amendment Due Process Clause and state statutes and regulations.

**TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC**
P.O. BOX 1479  •  NEWBURGH, N.Y. 12651  •  (845) 565-1100

With respect to interests arising directly under the Due Process Clause, the Supreme Court has narrowly circumscribed its scope to protect no more than the most basic liberty interests in prisoners" (id. [internal citation omitted]). "It is settled that among the 'most basic liberty interests' retained by prison inmates is the First Amendment right to freely exercise religion." (id.).

"While prisoners, like other citizens, have a First Amendment right to the free exercise of their religion, through individual prayer or congregated religious services, a threshold question is whether the alleged state action in question substantially burdens that right" (Wagnoon v Gatson, 2001 WL 709276, at *3 [SD NY 2001]; see Salahuddin v Goord, 467 F3d 263, 274 [2d Cir 2006]; Ramsey v Goord, 661 F Supp 2d at 395). "In order to be considered a 'substantial burden', the plaintiff must demonstrate that the government's action pressured him to commit an act forbidden by his religion or prevented him from engaging in conduct or having a religious experience mandated by his faith" (see Guarneri v Hazzard, 2010 WL 1064330, at *17). "The burden must be more than an inconvenience; it must be [sic] substantially interfere with a tenet or belief that is central to the religious doctrine" (id.)

If plaintiff establishes this burden, the defendant then bears the relatively limited burden of identifying the legitimate penological interest that justify the impinging conduct; "the burden remains with the prisoner to 'show that these [articulated] concerns were irrational'" Salahuddin v Goord, 467 F3d at 274-275, quoting Ford v McGinnis, 352 F3d 582, 595 [2d Cir 2003]).

"While a prisoner must be afforded 'a reasonable opportunity of pursuing his faith' that right must be evaluated in light of prison officials' interests in security and is subject to restrictions 'narrowly designed to promote the legitimate governmental interest in institutional discipline and security'" (Joshua v New York City Dept. of Correction, 1987 WL 9199, at *2

13

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

[SD NY 1987]).  In addition, "'[t]here may be inconveniences… so trivial that they are most properly ignored.  In this respect, this area of the law is no different from many others in which the time-honored maxim '*de minimis non curat lex*' applies'" (Evans v Albany County Correctional Facility, 2009 WL 1401645, at *7 [ND NY 2009], quoting McEachin v McGuinnis, 357 F3d 197, 203 n. 6 [2d Cir 2004]).

For instance, Courts have found that missing one religious service is a *de minimis* intrusion and does not constitute a substantial burden of inmates' free-exercise of religion under the First Amendment  (see e.g. Cancel v Mazzuca, 205 F Supp 2d 128, 142 [SD NY 2002] [granting defendant's Rule 12[b][6] motion to dismiss prisoner's First Amendment free-exercise claim that defendant "prevented him, on one occasion, from attending a religious service"]; Wagnoon v Gatson, 2001 WL 709276, at *8 [granting defendants' Rule 12[b][6] motion to dismiss prisoner's First Amendment free-exercise claim that defendants caused prisoner to miss all or part of his midday Muslim prayers on one day] [citations omitted]; Gill v DeFrank, 2000 WL 897152, at *1-2 [SD NY 2000] affd, 8 Fed Appx 35 [2d Cir 2001] [granting defendants' motion for summary judgment dismissing prisoner's First Amendment free-exercise claim that defendants caused prisoner to miss one weekly religious service] [citations omitted], [unpublished decision]; Troy v Kuhlmann, 1999 WL 825622, at *4, 14-15 & n. 4 [SD NY1999] [granting defendants' motion for summary judgment dismissing prisoner's First Amendment free-exercise claim that defendants caused prisoner, of the Muslim faith, to miss one weekly religious service on Friday, May 31, 1996] [citations omitted]; see also Johnson v Newton, 2007 WL 778421, at *5 [ND NY 2007] [granting defendant's motion for summary judgment dismissing prisoner's First Amendment free-exercise claim that defendant prevented the prisoner from entering a mosque on one occasion because, even assuming the truth of that allegation,

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

"missing one religious service does not constitute a substantial burden on an inmate's right to the free exercise of his religion") [internal quotation marks and citations omitted]; <u>Williams v Weaver,</u> 2006 WL 2794417, at *5, n. 29 [ND NY 2006] [granting defendant's motion for judgment on the pleadings with respect to prisoner's First Amendment free-exercise claim that defendant caused prisoner to miss two weekly religious services] [citations omitted]; <u>Persad v Savage,</u> 2004 WL 1570286, at *7 [WD NY 2004] ["Despite the cancellation of one (or even two) Juma service, Plaintiffs and other Muslim inmates were free to practice their religion [for purposes of the First Amendment]"), <u>adopted by,</u> 2004 WL 1858140 [WD NY 2004]; <u>Boomer v Irvin,</u> 963 F Supp 227, 230-31 [WD NY1997] [granting defendant's motion for summary judgment dismissing prisoner's free-exercise claim, asserted under both the First Amendment and the RFRA, that defendants prevented the prisoner from attending one Muslim Jumu'ah service due to keeplock confinement]).

Moreover, negligence will not carry a §1983 claim, nor is negligence actionable under either the First or Fourteenth Amendments (<u>see e.g.</u> <u>Tafari v Annets,</u> 2008 WL 2413995, at *17 [SD NY 2008], <u>adopted by</u> 2008 WL 9449372 [SD NY 2008], <u>aff'd</u> 363 Fed Appx 80 [2d Cir 2010], <u>cert. denied</u> 2010 WL 1652961 [2010] [defendants' denials of kosher meals to inmate on four occasions was not intentional or malicious, but appeared to be at most the result of negligence by prison officials]; <u>Young v Scully,</u> 1993 WL 88144 at *7 [SD NY 1993] [ "There is no evidence in the record that the alleged deprivation of Plaintiff's first amendment [religious] rights involved any degree of fault by defendants.... 'Negligence alone will not carry a § 1983 action'"]; <u>Hawkins v New York State Dept. of Correctional Servs.,</u> 2008 WL 2019655 at *5 [ND NY 2008] ["One reason that [plaintiff's] First and Fourteenth Amendment [religious freedom] claims fail is because he has not alleged facts plausibly suggesting anything other than

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

*negligence* by Defendants.... Negligence is not actionable under either the First or Fourteenth Amendment."] [fn. citing cases omitted]; Odom v Dixion, 2008 WL 466255 at *11 [WD NY 2008] [Summary judgment for defendants where "Plaintiff submits nothing contradicting Defendants' assertion that Plaintiff's temporary removal from the CAD program was nothing more than an administrative error .... It is settled that mere negligence on the part of prison officials is insufficient to establish liability under § 1983"]).

### A.    **Distribution of Tracts**

Plaintiffs allege that Rev. Clapp acted with actual malice toward plaintiffs and with willful and wanton indifference and deliberate disregard for their statutory and constitution rights, depriving them of freedom of religion and liberty without due process of law in violation of plaintiffs First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution [see Ex. "A"].

Specifically, plaintiffs allege that Rev. Clapp distributed two religious booklets published by Chick Publications, entitled "Men of Peace?" and "Allah has no Sons," which contain defamatory statements about the Muslim religion.  Plaintiffs further allege that Rev. Clapp repeatedly distributed these booklets to inmates at Rockland County Jail from March 26, 2007 to May 7, 2007 [see Ex. "A"].

As an initial matter, Rev. Clapp was suspended on April 12, 2007, as such she could not possibly have repeatedly and continuously distributed the subject tracts from March 26, 2007 until May 7, 2007 as alleged in plaintiffs' complaint [see Ex. A; see Clapp Aff.; Ex. "F"].  In any event, the distribution of the subject tracts and their circulation within the prison population occurred over a 2 to 3 day period [see Clapp Aff.].  The booklets were distributed on or about March 26, 2007 and removed by Rev. Clapp on March 27, 2007 after she spoke with Inmate

Epps regarding the content of the subject tracts [see Clapp Aff.].  Rev. Clapp attests in her affidavit that she had not seen nor read the subject tracts prior to placing them on the table with a number of other Chick publications [see Clapp Aff.].  In a disciplinary proceeding brought against Rev. Clapp for the distribution of these same tracts, it was determined by the Arbitrator that her conduct amounted to negligence [see Ex. "K"].  The plaintiffs, nor any inmates, were required or forced to read the subject tracts [see Clapp Aff.].

The plaintiffs' exposure to the subject tracts was minimal and did not amount to a substantial burden of their rights of religious freedom (cf. Cancel v Mazzuca, 205 F Supp 2d at 142; Wagnoon v Gatson, 2001 WL 709276, at *8; Gill v DeFrank, 2000 WL 897152, at *1-2; Troy v Kuhlmann, 1999 WL 825622, at *4, 14-15 & n. 4).

Moreover, any conduct on the part of Rev. Clapp in the distribution of the subject tracts was the result of mere negligence; as such, plaintiffs cannot maintain a cause of action against Rev. Clapp under § 1983 for violation of their First and Fifth Amendment rights (see Tafari v Annets, 2008 WL 2413995, at 17; Young v Scully, 1993 WL 88144 at *7; Hawkins v New York State Dept. of Correctional Servs., 2008 WL 2019655 at *5; Odom v Dixion, 2008 WL 466255 at *11).

### B.   Use of the Koran

Plaintiffs allegations against Rev. Clapp that she refused to permit plaintiffs to use their Korans must also fail.  Rev. Clapp states that she regularly distributed religious materials to the inmate population, including Korans and Bibles [see Clapp Aff.].  In fact, on the date the tracts were placed on the table in the housing unit, Rev. Clapp also distributed Korans and Bibles [see Clapp Aff.].  Rev. Clapp and Captain Conjura further state that Rev. Clapp had no decision-making authority with regard to the policy regarding the Noble Koran [see Clapp Aff.; Conjura

Aff.].  The policy was instituted to maintain discipline within the jail [see Conjura Aff.]  In addition, the policy only involved the purchase and distribution of one particular publication of the Koran by the jail; that is the "Noble Koran" [see Conjura Aff.].  Plaintiffs were, in fact, permitted access to other publications of the Koran, and Rev. Clapp distributed approved publications to the Muslim inmate population [see Clapp Aff.; Conjura Aff.].  Moreover, and most importantly, inmates, including plaintiffs, were permitted to keep a "Noble Koran" in their possession if provided to them from an outside source [see Clapp Aff.; Conjura Aff.]; as such plaintiffs rights to religious freedom were not substantially burdened (see e.g. Sostre v McGinnis, 334 F2d at 911, citing Matter of Ferguson, 55 Cal 2d 663, 675 [Cal 1961], cert. denied 368 US 864 [1961] [recognizing that prisons may circumscribe religious content by rules and regulations which will permit the authorities to maintain discipline in the prison and failing to permit prison officials do to so "would be to compel the prison officials to permit inmates to purchase and disseminate in the prison literature advocating and encouraging the very conduct which the prison authorities may lawfully suppress"]).

C.   **Religious services held in the "Barber Shop"**

Plaintiffs allege that Muslim services were held in the "barber shop" which hindered and prevented prayer service.

The United States Supreme Court has stated that not "every religious sect or group within a prison-however few in number-must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand" (Cruz v Beto, 405 US 319, 322 n. 2 [1972]; see Guarneri v Hazzard, 2010 WL 1064330, at *18).

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

Here, plaintiffs' allegation that use of the "barber shop" for prayer services hindered and prevented prayer service does not amount to a substantial burden of their rights of freedom of religion. The Rockland County Jail has four available rooms for all jail programs [see Conjura Aff.; Clapp Aff.]. Multipurpose Room No. 2 was used by all religious groups for religious services [see Conjura Aff.; Clapp Aff.]. Muslim prayer services were held on Fridays in the Multipurpose Room No. 2 [see Conjura Aff.; Clapp Aff.]. Neither Captain Conjura nor Rev. Clapp has any knowledge or recollection of Muslim prayer services being held in the barbershop [see Conjura Aff.; Clapp Aff.]. However, both Captain Conjura and Rev. Clapp state that the only reason that any prayer service for any religious group would be held in the barbershop is that no other room was available do to scheduling conflicts with another Jail program [see Conjura Aff.; Clapp Aff.]. Regardless of which room prayer services were held, plaintiffs were not prevented from attending services and while service in the barber shop may have been inconvenient, such inconvenience did not substantially interfere with plaintiffs' ability to participate in religious services (see Guarneri v Hazzard, 2010 WL 1064330, at *17).

### D.   **Hiring of an Imam**

"While an inmate has a constitutional right to practice his religion, the prison staff 'is not under an affirmative duty to provide each inmate with the spiritual counsel of his choice'" (Guarneri v Hazzard, 2010 WL 1064330, *18, quoting Davidson v Davis, 1995 WL 60732, at *5-6 [SD NY 1995]; see also Muhammad v City of New York Dept. of Correction, 904 F Supp 161, 189 [SD NY 1995] [holding that DOC's failure to employ a Nation of Islam minister did not substantially burden inmates free exercise of his religion under RFRA where prison provided orthodox Muslim Imams and various religious services and accommodations for Muslim inmates, including generic congregate Muslim prayer service every Friday and religious study

19

groups]).  "A plaintiff cannot demonstrate that his ability to practice his religion is substantially burdened by the requirement that he bear the responsibility for coordinating visits with spiritual advisors" (Guarneri v Hazzard, 2010 WL 1064330, at *18).

The County routinely engaged the services of volunteer Imams to conduct prayer services for the Muslim inmate population [see Conjura Aff.].  In 2007, Imam Bourdeau and Imam Harris provided volunteer imam services for Muslim inmates [see Conjura Aff.].  Due to budget constraints and the inability to engage the services of a volunteer imam; however, an imam was not available to conduct Muslim prayer services during the relevant time period [see Conjura Aff.].  Nonetheless, Friday religious prayer services and Monday religious study group services continued uninterrupted and were facilitated, upon information and belief, by plaintiff Kenneth Kidd [see Conjura Aff.; Ex. "H"].   Based on the foregoing, the failure of the County to hire a Imam to conduct Muslim services does not constitute a substantial burden on plaintiffs rights to religious freedom (see Cruz v Beto, 405 US at 322 n. 2; Guarneri v Hazzard, 2010 WL 1064330, at *18; Davidson v Davis, 1995 WL 60732, at *5-6; Muhammad v City of New York Dept. of Correction, 904 F Supp at 189).

## POINT IV

### PLAINTIFFS FOURTEENTH AMENDMENT CLAIMS FAIL AS A MATTER OF LAW AS PLAINTIFFS WERE AFFORDED A REASONABLE OPPORTUNITY TO PURSUE THEIR FAITH.

Plaintiffs' claims arising under the Fourteenth Amendment fail as a matter of law because the plaintiffs cannot establish that they were denied a reasonable opportunity to pursue their faiths comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

"'The equal protection clause directs state actors to treat similarly situated people alike'" (Guarneri v Hazzard, 2010 WL 1064430, at *20 quoting Salahuddin v Perez, 2006 WL 266574, at *9 [SD NY 2006]). "'In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination'" (Johnson v Newton, 2007 WL 778421, at 6 [ND NY 2007], quoting Myers v Barrett, 1997 WL 151770, at 3 [ND NY 1997]). "'[T]he Equal Protection Clause does not require that 'every religious sect or group within a prison must have identical facilities or personnel'" (Guarneri v Hazzard, 2010 WL 1064430, at *20 quoting Allen v Toombs, 827 F2d 563, 569 [9th Cir 1987]). "Rather, it entitles each prisoner to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts'" (Guarneri v Hazzard, 2010 WL 1064430, at *20, quoting Shakur v Schriro, 514 F3d 878, 891 [9th Cir 2008]).

As previously argued above, Muslim prayer services, like all religious services, were held in Multipurpose Room No. 2. In addition, any religious group may have been required to hold services in the barbershop if the Multipurpose Room was unavailable due to a scheduling conflict within another Jail program. In addition, the County regularly engaged the services of volunteer imams to facilitate Muslim religious services, unfortunately, a volunteer was unavailable during the relevant time period, and due to budgetary constraints, an imam could not be hired by the County. Imam Bourdeau and Imam Paul Harris were engaged to facilitate Muslim religious services [see Conjura Aff.]. Nonetheless, during the one and half month period alleged by plaintiffs, Muslim religious services continued uninterrupted and plaintiffs were given a reasonable opportunity to pursue their faiths comparable to other religious groups. Based on

21

the foregoing, plaintiffs' Equal Protection claim should be dismissed (see Guarneri v Hazzard, 2010 WL 1064430, at *20; Johnson v Newton, 2007 WL 778421, at 6).

## POINT V

### PLAINTIFFS EIGHTH AMENDMENT CLAIMS FAIL AS A MATTER OF LAW AS PLAINTIFFS ALLEGED INJURIES ARE NOT "SUFFICIENTLY SERIOUS."

"The Eighth Amendment proscribes the 'unnecessary and wanton infliction of pain'" (Mateo v Fisher, 682 F Supp 2d 423, 432 [SD NY 2010]). "In order to prove that a prison condition amounted to cruel and unusual punishment, a plaintiff must satisfy both an objective and a subjective standard" (Johnson v Newtown, 2007 WL 778421, at * 3). "No every injury is a constitution one; a plaintiff alleging an Eighth Amendment violation must show that it is objectively 'sufficiently serious,' which means that the prisoner must not be denied 'the minimal civilized measure of life's necessities' and that conditions must be more than just 'restive and even harsh'" (Mateo v Fisher, 682 F Supp 2d at 432; see Johnson v Newtown, 2007 WL 778421, at * 3; Farmer v Brennan, 511 US 825, 834 [1994] [inmate must establish "substantial risk of serious harm"]; Dawes v Walker, 239 F3d 489, 493 -494 [2d Cir. 2001], abrogated on other grounds Swierkiewicz v Sorema N.A., 534 US 506 [2002]).

"To satisfy the subjective test, a plaintiff must show that the defendants were deliberately indifferent to plaintiff's health or safety" (Johnson v Newtown, 2007 WL 778421, at *3). "'[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment,' the prisoner must assert facts indicating that the responsible prison official had a 'sufficiently culpable state of mind' amounting to at least deliberate indifference-the subjective element" (Dawes v Walker, 239 F3d at 493-494, quoting Farmer v Brennan, 511 U.S. at 834). "Deliberate indifference is enough, but negligence is not" (Mateo v Fischer, 682 F Supp 2d at 423).

Here, the plaintiffs alleged deprivations under the Eighth Amendment are that other

22

inmates read the subject tracts which resulted in altercations between non-Muslim inmates and Muslim inmates, including the plaintiffs; and that as a result of the distribution of the subject tracts, non-Muslim inmates called the Muslim inmates' God (Allah), the devil causing plaintiffs severe psychological trauma [see Ex. "A"].

As an initial matter, the record before the Court establishes that none of the plaintiffs reported any altercation between themselves and other inmates [see Conjura Aff.; Es. "H"].  The case law dictates that these allegations are insufficient to establish a sufficiently serious deprivation under the Eighth Amendment (see e.g. Mateo v Fischer, 632 F Supp 2d at 432 [no Eighth Amendment violation where corrections officers called inmate "paranoid," referred inmate for a mental health evaluation, and isolated threats]; Petty v Goord, 2008 WL 2604809, * 5 [SD NY 2008] [defendants improperly disclosed inmates HIV status to others subjecting inmate to opprobrium could not objectively be considered sufficiently serious to render the conditions of inmate's confinement inhumane]; Dawes v Walker, 239 F3d at 494 [no Eighth Amendment violation where plaintiff could not show that correction officer's threats and spreading of rumors that plaintiff was a "rat" led other inmates to physically attack him]; Green v City of New York Dept. of Correction, 2008 WL 2485402, at *6-7 [SD NY 2008] [inmate whom officers falsely designated as gang-affiliated did not show that he faced a substantial risk of serious harm from other inmates; Shabazz v Pico, 994 F Supp 460, 474 [SD NY 1998] ["[V]erbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' ... is not actionable under 42 U.S.C. § 1983"] [citation omitted]; Young v Coughlin, 1998 WL 32518, at *7 [SDNY 1998], aff'd 182 F3d 902 [2d Cir 1999] [officer's sexually harassing comments did not give rise to an

Eighth Amendment violation]; Show v Patterson, 955 F Supp 182, 192 [SD NY 1997] [name-calling and laughing by correctional officers during strip search is not a constitutional harm]).

Furthermore, as previously argued above, Rev. Clapp's distribution of the subject tracts was merely the result of negligence, which does not rise to the level of deliberate indifference sufficient to constitute an Eighth Amendment Violation (see Mateo v Fischer, 682 F Supp 2d at 423).

## POINT VI

**PLAINTIFFS STATE LAW CLAIMS SHOULD
BE DISMISSED AS A MATTER OF LAW.**

**A.      Concurrent Violations of New York State Constitution**

Plaintiffs allege concurrent violations of the New York State Constitution's guarantees against cruel and unusual punishment, and of freedom of religion, due process and equal protection (see N.Y. Const. Art I, §§ 3, 5, 6, 11). As the New York Court of Appeals interprets these state constitutional rights to be co-extensive with the equivalent rights under the Federal Constitution, the Court need not consider the state claims separately (see West v City of New York, 1996 WL 240161, at *6 [SD NY 1996][First and Fifth Amendments]; Sanchez v Turner, 2002 WL 1343754, at *11 [SD NY 2002], aff'd on other grounds 378 F3d 133 [2d Cir 2004] [Fourteenth Amendment]; Balabin v Scully,1986 WL 5378, at *2 [SD NY 1986] [Eight Amendment]). To the extent the Court dismissed the plaintiffs' federal causes of action; the state causes of action against the County and Rev. Clapp should also be dismissed.

**B.      Rev. Clapp is not liable to plaintiffs in her personal capacity for any alleged
violation of plaintiffs' rights under the State constitution.**

"A federal court exercising pendent jurisdiction must apply state law. Thus, if state law does not recognize a plaintiff's right to bring an action in state court, a federal court, exercising

24

pendent jurisdiction, sitting as a state court, must follow the state law limitation on jurisdiction."
May v Donneli, 2009 WL 3049613, at *4 [ND NY 2009] [internal citation omitted].  New York
Correction Law § 24 explicitly bars prisoners suits against correctional personnel under state
law, and requires that any suit for official misconduct by them be filed against the State itself and
only in the New York Court of Claims.  Thus, § 24 precludes "the assertion of claims against
corrections officers [in their personal capacities] in any court, including the federal courts,' by
designating the New York State Court of Claims as the only available venue to bring a claim for
damages arising out [of] the acts committed by corrections officers within the scope of their
employment.  And, because the Court of Claims is a court of limited jurisdiction, hearing only
claims against New York State and no other individual or entity, § 24 amounts to a grant of
immunity for corrections officers sued in their personal capacities for claims arising out of the
discharge of their duties" (id.).

While Corrections Law § 24 does not apply to section 1983 claims as the Supreme Court
has held that the statute violates the Supremacy Clause (see Haywood v Drown, 129 S Ct 2108,
2117+ [2009]), it remains applicable to state law claims and; as such, plaintiffs' state law claims
against Rev. Clapp in her personnel capacity should be dismissed (see May v Donneli, 2009 WL
3049613, at *4; White v New York State Dept. of Correctional Servs., 2009 WL 860354, at *6
[SD NY 2009]; Thompson v New York, 2001 WL 636432, at *2 [SD NY 2009]).

## POINT VII

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW DISMISSING PLAINTIFFS' COMPLAINT IN ITS ENTIRETY.

Summary judgment is warranted where no genuine issue of material fact exists and the
undisputed facts are sufficient to support judgment as a matter of law (see Fed. R. Civ. P. 56;

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

Celotex Corp. v Catrett, 477 US 317, 322-23 [1986]; Anderson v Liberty Lobby Inc., 477 US 242, 250 [1986]).

The party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading, but…must set forth specific facts showing that there is a genuine issue for trial" (Fed. R. Civ. P. 56[e]).  A disputed issue of material fact alone is insufficient to deny a motion for summary judgment.  The disputed issue must be "material to the outcome of the litigation" (see Knight v United States Fire Ins. Co., 804 F.2d 9, 11 [2d Cir 1986], cert. denied 480 US 932 [1987]).  Equally important, the party opposing summary judgment must point to evidence that would allow "a rational trier of fact to find for the nonmoving party" (see Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 US 574, 587 [1986]).

As an initial matter, plaintiffs failed to exhaust their administrative remedies and, are therefore precluded from bringing suit against defendants (see Point I, supra).  As more fully set forth above, the allegations claimed by plaintiff do not constitute violations of the plaintiffs' rights under the First, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.  The distribution of the subject tracts was a singular isolated incident which does not amount to a custom or policy of the County (see Point II, supra).  Moreover, the distribution of the subject tracts was nothing more than mere negligence on the part of Rev. Clapp which is insufficient to establish a violation of plaintiffs' constitutionally protect rights (see Point II; Point III, A, supra). Plaintiffs were not deprived the use of the Koran (see Point II, Point III, B, supra).  All religious services used the same room for services, and even if Muslim prayer services were held in the barbershop, such inconvenience does not amount to a substantial burden of their rights or interfere with their reasonable opportunity to pursue their faith (see Point III, C; Point

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479   •   NEWBURGH, N.Y. 12551   •   (845) 565-1100

IV, supra).  In addition, the County's inability to provide an imam during a one and half month period does not constitute a custom or policy of conduct designed to deprive plaintiffs of their constitutional rights (see Point II; Point III, D, supra).  Futhermore, plaintiffs have not suffered a sufficiently serious injury to establish a violation of the Eight Amendment (see Point V, supra).

Lastly, to the extent that the Court finds that the Federal Constitutional law claims fail, so to should the Court find that the State law claims also fail (see Point VI, supra).

In light of the foregoing, defendants are entitled to judgment as a matter of law dismissing the complaint in its entirety.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully requests that the Court grant the instant motion for summary judgment and such other and further relief deemed just and proper.

Dated: Newburgh, New York
     October 14, 2010

Respectfully submitted,

TARSHIS, CATANIA, LIBERTH
MAHON & MILLIGRAM, PLLC
*Attorneys for Defendants*
COUNTY OF ROCKLAND and
REV. TERESA DARDEN CLAPP

By: _____
RICHARD M. MAHON, II (RM-9260)
One Corwin Court, P.O. Box 1479
Newburgh, New York 12550
Tel. No. 845-565-1100

TO:    ANDREW F. PLASSE, PC
        Attn: Andrew F. Plasse, Esq. (AP-3679)
        Attorney for Plaintiffs
        352 7th Avenue - Suite 1242
        New York, New York 10001
        Tel. No. (212) 695-5811