INDEX NO. 10 CV 1549 [RPP]

## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

GREGORY GORDON, KIN VASQUEZ and KENNETH KIDD,

Plaintiff,

- against –

THE COUNTY OF ROCKLAND and REV. TERESA DARDEN CLAPP, in her individual and official capacity as a Correction Officer employed by the County of Rockland,

Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 56

ANDREW F. PLASSE [AFP 3679]
Attorney for the Plaintiff
Office and P.O. Address
352 Seventh Ave., Suite 1242
New York, NY 10001-5012
(212) 695-5811

## **TABLE OF CONTENTS**

Table of Authorities .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

Preliminary Statement . . . . . . . . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . .  . . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Argument . . . . . . . . . . . . . . . . . . . .  . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.  Defendant Chaplain Clapp is Equitably Estopped from Asserting
The Failure to Exhaust Administrative Remedies as a Defense . . . . . . . .  10

II.  Sufficient Issues of Fact Exist to Preclude Defendants' Motion
For Summary Judgment on the Deliberate Indifference Claim . . . . . . . .  21

III. Qualified Immunity is Not a Defense  . . . . . . . . . . . . . .. . . . . . . . . . .  28

Conclusion . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . .  29

## TABLE OF AUTHORITIES

<u>**Cases**</u>

<u>Abney v. McGinnis,</u> 380 F.3d 663 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . 10

<u>Anderson v. Creighton,</u> 482 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . 28

<u>Anderson v. Liberty Lobby, Inc.,</u> 477 U.S. 242 (1986) . . . . . . . . . . . . . . . 22

<u>Barnett v. Rodgers,</u> 410 F.2d 995 (U.S. Ct. App. D.C. 1969) . . . . . . . . . . 23

<u>Consolo v. George,</u> 58 F.3d 791 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 26

<u>Cutter v. Wilkinson,</u> 544 U.S. 709 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>Doe v. New York City DSS,</u> 649 F.2d 134 (2nd Cir. 1981), cert. den.
464 U.S. 864 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

<u>Ford v. McGinnis,</u> 352 F.3d 82 (2nd Cir 2003) . . . . . . . . . . . . . . . . . . . . . . 22

<u>Freedom Holdings Inc. v. Spitzer,</u> 357 F.3d 205 (2nd Cir. 2004) . . . . . . . 18, 19

<u>Giano v. Goord,</u> 380 F.3d 670 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . 10, 11, 18

<u>Harlow v. Fitzgerald,</u> 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 28

<u>Hemphill v. New York,</u> 380 F.3d 680 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . 10

<u>Jackson v. Mann,</u> 196 F.3d 316 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 23

<u>Johnson v. Testman,</u> 380 F.3d 691 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . 10, 18

<u>Matsushita Elec. Indus. Co. v. Zenith Radio,</u> 475 U.S. 574 (1986) . . . . . . 21, 22

<u>Mojias v. Johnson,</u> 351 F.3d 606 (2nd Cir. 2003) . . . . . . . . . . . . . . . . . . . . 11, 12

<u>Oliveira v. Mayer,</u> 23 F.3d 642 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 28

<u>Ortiz v. Goord,</u> 276 Fed. Appx. 97, 2008 W.L. 1945912 (2nd Cir. 2008) . . . . 26

<u>Ortiz v. McBride,</u> 380 F.3d 649 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 10

Patrick v. LeFevre, 745 F.2d 153 (2nd Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . 23

 Porter v. Nussle, 534 U.S. 516 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Salhuddin v. Goorde, 467 F.3d 263 (2nd Cir. 2006) . . . . . . . . . . . . . . . . . 22, 23

Snider v. Melendez, 199 F.3d 108 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 11

Strong v. David, 297 F.3d 646 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 19

Wright v. Smith, 21 F. 3d 496 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 22

Ziemba v. Wezner, 366 F.3d 161 (2nd Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 11

**Rules**

Fed. Rules

42 U.S.C. Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 22

42 U.S.C. Section 1997 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. Section 2000cc-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . 22, 23

42 U.S.C. Section 2000cc-5(7)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. Rules Civ. Proc. Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 21

Fed. R. Evidence  Section 803  (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

RLUIPA Section 3  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

State Rules

9 N.Y.C.R.R. Section 7032.4(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

New York State Commision of Crrection Memorandum 7-2005 . . . . . . . . . . . 6

## PRELIMINARY STATEMENT

Plaintiffs commenced this action for violation of their civil rights pursuant to 42 U.S.C. Section 1983. The Complaint [Plasse Dec. Ex. "A"] against the Defendants alleged violations of their constitutional rights under the First, Fifth, Eighth and Fourteenth Amendments.

The Claim against Chaplain Clapp is that she disparaged the Muslim Religion and was deliberately indifferent to the plaintiffs' free exercise rights under the First Amendment, and that such conduct violated their due process under the Fifth and Fourteenth Amendment.

The claim against Rockland County is that it allegedly had a policy of interfering with plaintiffs' religious practices, and the failure to remedy such a policy, violated plaintiffs' free exercise rights under the First Amendment.

Defendants  have moved for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Defendants allege that the plaintiffs failed to exhaust their Administrative Remedies.  In opposition, Plaintiffs assert that the Defendants' should be equitably estopped from using this Affirmative Defense, for several reasons, including, that [a] the plaintiffs' attempts to file written  grievances were hindered by County employees; [b] the failure of Rockland County to follow State regulations promulgated by the New York State Commission of Correction providing that informal grievance resolution is not a pre-requisite for filing a written grievance; and [c] the investigation undertaken by the Rockland County Jail into this matter.

Additionally  Defendant Chaplain Clapp asserts that the Distribution of the Tracts

portraying Islam in an extremely unfavorable light was not deliberate indifference to the Plaintiffs' constitutional rights.  Plaintiffs oppose this on the basis that the evidence proffered in support of the motion demonstrates that Chaplain Clapp  was deliberately indifferent to the plaintiffs' religious rights and that defendant Clapp failed to meet her initial burden of proof.

Plaintiffs hereby withdraw all claims against defendant Rockland County.

There remains only one defendant - Chaplain Clapp.

As will be demonstrated below, there are material issues of fact which should preclude Summary Judgment on the issue of Exhaustion of Administrative Remedies and whether Chaplain Clapp was deliberately indifferent to the plaintiffs First Amendment rights.

In regard to the Exhaustion Issue, defendant should be equitably estopped from using as a defense the failure to exhaust administrative remedies because [1]the grievance system in effect in March and April of 2007 was a nullity;  [2] plaintiffs complied with the grievance proceedings promulgated by Rockland County Jail to the extent possible; and  [3] defendant obtained notice of the incident through its internal investigation.

In regard to the deliberate indifference to the Plaintiffs First Amendment rights, there is no issue that Chaplain Clapp had a duty as Jail Chaplain to distribute religious literature, that she distributed booklets offensive to the Islam Religion, and that the breach of that duty was deliberate indifference. Additionally, the facts proffered by Chaplain Clapp in support of her motion set forth  that she was deliberately indifferent to the plaintiffs' religious practices.

## STATEMENT OF FACTS

2

I. The Incident

Plaintiffs Gregory Gordon, Kin Vasquez, and Kenneth Kidd allege that on March 27, 2007, they were detainees in the Rockland Country Jail.  Plaintiffs allege that they were practicing Muslims. [Plasse Dec. Ex. B, Vasquez Aff. Par. 11]  Chaplain Clapp was employed by Rockland County Jail as Religious Advisor.  [Clapp Aff. Par 3]

On March 27, 2007, Chaplain Clapp distributed booklets by Chick Publications.  Two of the booklets were entitled "Men of Peace?" showing a caricature of Middle Eastern Men on the cover and the other was entitled "Allah Had No Son" [Plasse Dec. Ex. B, Vasquez Aff.  Par 5; Plasse Dec. Ex. C, Kidd Aff. Par. 4; Plasse Dec. Exs. "D" & "E"]

Both of these booklets disparaged the Muslim religion in many ways.

For example, "Allah Had No Son" concludes with this statement: [T]he truth is that Allah is **not God,** Muhammad was **no prophet** and the Koran is **not the word of God."**  The follower of Islam cries at the end of the booklet, after being told that his religion is false, and says "O God, I've been deceived. Allah is a false god, Muhammed is not your prophet and the Koran is not Your Holy Word."  [Plasse Dec. Ex. "E"]

The booklet 'Men of Peace?' starts off describing a fictional bombing in London, where hundreds are dead and missing, a week after Paris was bombed and that the organization responsible for this fictional bombing is 'Muhammad's Faithful.'  A fictional discussion follows the bombing, with a grandfather telling his granddaughter that Allah is not God, but was a 'Moon Idol' that Muhammed declared to be a God and that the religion of Islam is based on a false premise.  The pamphlet states "Murder, plunder and rape became lawful. Unforgiving Allah used hate, fear and death to create

3

the Islamic Empire." [Plasse Dec. Ex. "D"]

As a result of the distribution of these booklets, not only were the plaintiffs' beliefs disparaged and insulted, but they were physically injured and intimidated by other inmates with religious beliefs different from their own. [Plasse Dec Ex 'B' Vasquez Aff. Pars 13 & 14; Plasse Dec. Ex. C Kidd Aff. 40-43]

Kim Vasquez was a practicing Muslim sine 1999. [Plasse Dec. Ex. B, Vasquez Aff. Par 11]. He was sincere in his practice. [Plasse Dec Ex. B,   Vasquez Aff Par 12]

Kim Vasquez watched Chaplain Clapp distribute the booklets 'Men of Peace' and 'Allah Has No Son'.  She told inmates to pick them up and read them.  [Plasse Dec. Ex. B.,  Vasquez Aff. Par 25]  When Vasquez read the pamphlets, he was heartbroken.  The pamphlets insulted his strong religious beliefs. [Plasse Dec. Ex. B,   Vasquez Aff. Par 13]

Kenneth Kidd was offended by the pamphlets. He confronted Rev. Clapp the day after they were distributed in her office. [Plasse Dec. Ex. C, Kidd Aff. Par. 11]. Rev. Clapp responded by giving Kenneth Kidd a copy of "Allah the Moon God". [Plasse Dec. Ex. C, Kidd Aff. Par 12; Plasse Dec. Ex. H].  "Allah the Moon God" contained more disparaging remarks about Islam.  Rev. Clapp told Kidd that the statements in "Allah the Moon God" were correct. [Plasse Dec. Ex. C, Kidd Aff. Par. 12]

After the pamphlets were distributed, Kenneth Kidd was harassed by non- Muslim detainees.  A detainee nicknamed "Rock" took one of the pamphlets, stuffed it in his jumper, cursed at him and then punched him in the mouth.  [Plasse Dec. Ex. C, Kidd Aff. Par. 39, 40].  Rev. Clapp's husband was later arrested and put in the same jail with Kenneth Kidd.  Rev. Clapp's husband found Kenneth Kidd in the law library and threatened him with verbal intimidation. [Plasse Dec. Ex. C., Kidd Aff. Pars. 41 & 42]

Rev. Clapp was the religious advisor at Rockland County Jail. She distributed pamphlets and a two page document to Kenneth Kidd that he found offensive. [Plasse Dec. Ex. C, Kidd Aff. Pars. 13 & 14]

The pamphlets were never retrieved. There was no effort by the Jail Staff to get rid of the booklets. [Plasse Dec Ex C, Vasquez Affidavit Par. 28

## II. The Grievance Program

The Rockland County Department of Correction Departmental Wide Inmate Grievance Program in effect in March 2007 provided that an Inmate initially pursue an Informal Complaint procedure consisting of [1] an informal Grievance Procedure consisting of the inmate attempting to resolve the issue with the Housing Unit Officer or Officer assigned to that detail, then in the event the issue is unresolved, going up the line of command to a Sergeant, Lieutenant and if the matter is not satisfied, a Formal Grievance was to be provided to the inmate. A Grievance Coordinator was to be informed of the steps made to resolve the issue during the informal Grievance Procedure. The Formal Grievance must be filed with five business days of the occurrence. [Mahon Dec in Support of Motion for Summary Judgment Ex E]

Grievance forms shall be made available to an inmate/detainee only after exhausting the informal complaint process. [Mahon Dec. in Support of Motion for Summary Judgment Ex. E]

Immediately after this incident occurred, Kenneth Kidd notified the Correction Officer in charge of Religious Activity, Reverend Clapp, about the distribution of the pamphlets. He complained to her about the content of the pamphlets. She responded by providing him with a copy of a two page document which was equally offensive to the

pamphlets. [Plasse Dec Ex C, Kidd Affidavit Pars. 11, 12, & 13]

Kenneth Kidd then notified Officers in the chain of Command.  He requested a form to file the Formal Grievance. The Lieutenant in charge of providing the written Forms came  to his cell in the middle of the night.  Kenneth Kidd asked for the form. The Lieutenant did not provide him with the Written Grievance form.  [Plasse Dec Ex C, Kidd Affidavit Pars 22, 23, & 24]

Immediately after the distribution of the pamphlets, Kim Vasquez told a Correction Officer he wanted to file a Grievance.  He was referred to another Officer who tried to persuade him not to file a Grievance because the Jail was aware of the situation and promised it would look into it.  Kim Vasquez was told that the issue was being resolved.  [Plasse Dec. Ex. B. Vasquez Aff Pars 16 & 17]

Prior to this incident, on May 14, 2005, the Chairman of the New York State Commission of Correction issued a Memorandum, No. 7-2005, dated May 14, 2005 to Jail Administrators and Grievance Coordinators, which included the Rockland County Jail, about the Grievance Process.  [Plasse Dec. Ex. F]

The Chairman's Memorandum specifically sets forth that the Commission of Corrections assessed country jails' compliance with the Grievance Programs. One of the issues set forth was that inmates have been denied grievance forms because of their failure to utilize facilities' informal grievance procedure. The Commissioner's Memorandum made if very clear that facility staff could not refuse an inmate a grievance from based on a decision not to participate in an informal grievance process and further directed that facilities make the forms readily available within five days of the date of the incident.  [Plasse Dec. Ex. F]

The Memorandum further directed the jail to incorporate this Memorandum in the jail's written procedures, inmate handbooks and related grievance forms.   [Plasse Dec. Ex. F]

On or about November 19, 2009, the United States Attorney for the Southern District of New York, concluded an investigation under the Civil Rights of the Institutionalized Persons Act, a federal law that authorized the Attorney General to investigate systematic abuses of people confined in institutionalized settings such as the Westchester County Jail.  The report found that conditions at the Westchester County Jail violated the Constitutional Rights of Inmates.  The report was contained in a 42 page letter, which was delivered on November 19, 2009 to Westchester County Attorney Charlene M. Indelicato.  [Plasse Dec. Ex. G]

On Page 16 and 17 of the report, the findings specifically included a finding that the Westchester County Jail failed to maintain an adequate detainee grievance system.  The report found that in the years 2006 and 2007 not a single grievance was filed by any detainee.  The report found that an explanation for this was that a detainee was provided a grievance form only after exhausting the informal complaint process. [Plasse Dec. Ex. G]

The report further stated: "Requiring a detainee to pursue the matter informally compromises the review and investigative processes especially in those instances in which unlawful actions may have occurred.  Detainees who may have been subjected to unlawful force will at best be reluctant to seek resolution from those who may have witnessed or been involved in the very actions that would form the basis for the grievance." [Plasse Dec. Ex. G. Pages 16 & 17]

The report recommended that the jail "Develop and implement policies,

procedures, and practices to ensure inmates have access to an adequate grievance process

that ensures that grievances are processed and legitimate grievances addressed and

remedied in a timely manner, responses are documented and communicated to inmates,

inmates need not confront staff prior to filing grievances about them, [underlining added

for emphasis] and inmates may file grievances confidentially. [Plasse Dec. Ex. G. Page

36]

     The Grievance System in Westchester County is similar to that one in effect at

Rockland County Jail.

     On March 27, 2010, Captain Joseph Conjura was told by Officer Jack Terrible

that Inmate Dorian Epps wanted to speak to him regarding Chaplain Clapp.  [Mahon

Dec. Ex G; Clapp Aff. Par 3] On March 28, 2007, Captain Conjura spoke with Inmate

Epps about the distribution of the  pamphlets from Chick Publications. [Clapp Aff. Par 3]

Inmate Epps told him he was thinking about filing  a formal grievance against the

Chaplain for distribution of the pamphlets.  [Mahon Declaration Ex G - To/From Memo

by Captain Conjura] Captain Conjura spoke with Captain John Liska about the

pamphlets.  On March 28, 2007, Conjura spoke with Chaplain Clapp in her office.

Captain Conjura told her to pick up the pamphlets and not to distribute any more Chick

Publication pamphlets in the jail until further notice.  After that, Captain Conjura spoke

with Epps and told him that the pamphlets would no longer be distributed.  [Mahon Dec

Ex. G]

     Captain Conjura interviewed inmates on April 16, 2007 about the Clapp matter.

[Mahon Dec. Ex. H]    Among the inmates interviewed were Kenneth Kidd, Gregory

Gordon, but not Kin Vasquez who posted bail.  Both Kidd and Gordon provided

extensive statements to Captain Conjura. [Mahon. Dec. Ex. H]

On May 15, 2007, the Rockland County Office of the Sheriff filed Disciplinary Proceedings against Chaplain Clapp. [Mahon Dec. Ex. J]

Among the charges filed, were allegations under the title of Gross Misconduct, Misconduct and Gross Negligence. [Mahon Dec. Ex. J]

The Gross Negligence charge alleged that she abused her position as Chaplain at the Jail by providing Pamphlets to inmates that you knew, or should have known, were clearly offensive to Muslims and that she allegedly abused her position as Chaplain of the Rockland County Jail by providing pamphlets to inmates that you knew or should have known were attempts to convert their religion. [Mahon Dec. Ex. J]

On August 30, 2007, Paul Bailey, an Arbitrator, made findings of fact in the Disciplinary hearings finding that there was "[J]ust Cause to discipline Jail Chaplain Teresa Darden Clapp for bringing the "Men of Peace" pamphlet into the Rockland County Jail. . ." [Mahon Dec. Ex. K]

In sustaining the charges, the Arbitrator stated that "[A]lthough she may not have had the time to read every word of every publication that she brought into the Jail she still had a duty either to physically inspect them for hidden contraband, or store them outside the secure areas of the facility until time permitted her to do so. . . . Ironically, had the employee followed security protocols herself, and taken a few minutes to thumb through the Chick Publications pamphlets checking for contraband, she may have recognized the offensive and inflammatory message contained in the 'Men of Peace?' booklets and not delivered them to the inmates in the first place." [Mahon Dec. Ex. K, Pages 19, 20]

## ARGUMENT

## I. DEFENDANT CHAPLAIN CLAPP IS  EQUITABLY ESTOPPED FROM ASSERTING THE FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AS A DEFENSE

Plaintiffs urge this Court to find that plaintiffs attempted to exhaust their administrative remedies.  Furthermore, Defendant Chaplain Clapp should be estopped from asserting this defense due to the actions taken by the prison officials in charge of administering the program at the Rockland  County Jail.    Finally, due to the investigation of the incident and the subsequent charges brought against Chaplain Clapp, defendant obtained notice of the alleged incident and is equitably estopped from asserting this defense.

The Second Circuit has issued a series of opinions addressing the PLRA exhaustion requirements in this area.  The cases are  Abney v. McGinnis, 380 F.3d 663 [2nd Cir. 2004]; Giano v. Goord, 380 F.3d 670 [2nd Cir 2004]; Hemphill v. New York, 380 F.3d 680 [2nd Cir. 2004]; Johnson v. Testman, 380 F.3d 691 [2nd Cir. 2004]; Ortiz v. McBride, 380 F.3d 649 [2nd Cir 2004.

In Hemphill, supra., the Second Circuit articulated a three-part framework for analyzing contentions that an inmate failed to exhaust his or her Administrative Remedies.  First, 'depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were 'in fact available to the prisoner'" Abney, supra., at 663.  [In this case, it is alleged that the remedies were so seriously flawed, that in effect it was a nullity] Second, the court should then 'inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise it or preserve it [Johnson, supra., at 691] or whether the defendants own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the

defendants from raising the plaintiff's failure to exhaust as a defense.' [Citing Ziemba v. Wezner, 366 F.3d 161, 163 [2nd Cir. 2004]. [Here it is alleged that non-party employees of Rockland County inhibited the plaintiffs' exhaustion of remedies.] "Third, the 'Court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedure requirements.' Giano, supra. At 675-76.   [In this case, plaintiffs tried to comply with the 'informal' and 'formal' Grievance process, but their respective attempts were frustrated by the actions of County of Rockland employees who either tried to convince them that the matter was resolved via informal grievance or failed to provide the inmates with a written grievance form when requested and as required under State Regulation].

Plaintiff's position is that the [1] Rockland County  Jail's Administrative remedies were incapable of being processed and in effect a nullity; in the alternative, that [2] County of Rockland employees inhibited the exhaustion of remedies by placating them through the informal process and denying plaintiffs access to the written grievance forms as required by law; and [3] in the alternative, Defendants had notice of this claim by virtue of its investigation and the proceedings in the  disciplinary hearing against Chaplain Clapp.

As a consequence, it is requested that this Court find that the defendants are estopped from asserting this Affirmative Defense.

"A court may not dismiss for failure to exhaust administrative remedies unless ... [it] determines that such remedies are available." Snider v. Melendez, 199 F.3d 108 at 114 (2nd Cir. 1999);  Mojias v. Johnson, 351 F.3d 606, 609-10 (2d Cir.2003). When determining whether an administrative remedy is available, courts "should be careful to

look at the applicable set of grievance procedures, whether city, state or federal." Mojias, supra., at 610.

Defendants provided plaintiff's counsel with a copy of the Departmental Wide Inmate Grievance Program in effect on the date of the incident. [Mahon Dec Ex "D"].

The document states that it was effective on February 1, 2006. Paragraph XXI of the document sets forth the Grievance procedures.

A detainee was required to initiate an informal complaint by attempting to resolve the issue with his housing Unit Officer or the Officer assigned to that detail. In the event the issue is not resolved, the Officer will notify the area Sergeant, and if the issue remains unresolved, the Sergeant is to notify the Shift Lieutenant, and if the shift Lieutenant cannot resolve the issue, a formal Grievance will be issued. [Mahon Dec. Ex. "D" Page 12]

The Formal Grievance procedure must be filed within five business days of the date of the act or occurrence. [Mahon Dec. Ex. "D" Page 12]

In its Rockland County's Official Inmate Grievance Policy document, effective June 1, 2001, under the heading Procedures, Paragraph [k], it states that a Grievance must be filed within five days in accordance with Rule 9 NYCRR 7032.4(d). [Mahon Dec. Ex. "E" Page 5]

9 NYCRR Rule 7032.4(d) is a State Regulation, applicable to Jail Administrators by the New York State Commission of Correction. The State regulation requires that Rockland County Jail must make the Grievance forms available within five days of the act or occurrence giving rise to the grievance upon request. The State Regulation further provides that the form shall be issued whether or not an informal grievance system is in

effect.

      The Chairman of the New York State Commission of Correction issued a Memorandum to Jail Administrators on May 14, 2005 stating that "Pursuant to 9 NYCRR, Section 7032.4(d) facilities shall make the Grievance forms readily available so that an inmate may file a grievance within five days of the date of the act or occurrence giving rise to the Grievance. The Commission defines *readily available* as within 24 hours of the inmate's request.  The Memorandum further states, "This will provide facilities sufficient time in their effort to resolve complaints informally. Additionally, since grievance forms must be issued within 24 hours of request, arrangements must be made for sufficient access to the forms by facility staff not only during the normal business days, but on weekends and holidays as well."

      The Memorandum further states: "Accordingly, facility staff cannot refuse an inmate a grievance form based on his/her decision not to participate in an "informal" grievance process."  [Plasse Dec. Ex. F]

      County of Rockland Jail employees failed to provide Grievance forms within twenty four hours of the request by Kenneth Kidd and Kim Vasquez. [Plasse Dec. Ex. C, Kidd Aff. Par. 23; Plasse Dec. Ex. B, Vasquez Aff. Par. 17] The failure to provide these forms was in contravention of the State's regulations and the Memorandum by the State Commission of Correction.  Defendant should not be permitted to claim that plaintiffs failed to follow its Grievance Procedures, when its Grievance procedures in existence was contrary to State law.   Plaintiffs by asking for the form, had in fact, complied with the State law regulations for filing the Grievances.   The Rockland County Jail's Grievance system in effect in 2007 was contrary to State Law. It cannot assert as an

affirmative defense the plaintiffs failure to file as a defense when its system as devised was seriously flawed. Hemphill v. New York, supra.

Westchester County had a similar system of filing Administrative Grievances. The United States Department of Justice made a report setting forth matters observed pursuant to a duty imposed by law and conducted factual findings resulting from an investigation made pursuant to authority granted by law, of the Westchester County Jail. [Plasse Dec. Ex. G]

Significantly, the report found specifically that the Westchester County Jail failed to maintain an adequate detainee grievance system. The report found that in the years 2006 and 2007 not a single grievance was filed by any detainee. The report found that an explanation for this was that a detainee was provided a grievance form only after exhausting the informal complaint process. The report further stated: "Requiring a detainee to pursue the matter informally compromises the review and investigative processes especially in those instances in which unlawful actions may have occurred. [Plasse Dec. Ex. G Pages 16 & 17].

The Department of Justice report is admissible evidence pursuant to Federal Rule of Evidence Section 803 [8]. It is a report conducted pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. Section 1997. This law provides the Department of Justice with authority to seek a remedy for a pattern or practice of conduct that violates the constitutional rights of incarcerated persons. [Plasse Dec. Ex. G, Page 1, First Paragraph.]

The Department of Justice report is relevant because the Westchester County Jail Grievance System has a similar two tiered Grievance process. As with the Rockland

County Jail, the detainee had to exhaust an informal unwritten process, by asking Correction Officers from lower rank to higher rank, to resolve his problem, prior to obtaining a written Grievance Form.  The Department of Justice concluded in its investigation that  requiring an informal resolution prior to permitting an inmate to file a written grievance compromised the entire process.

Rockland County Jail employees are obviously cognizant  of the Prison Litigation Reform Act's requirement that an inmate exhaust his Administrative Remedies prior to filing a Federal Lawsuit. [Captain Conjura Aff Par. 9] The promulgation of a system contrary to State regulations and the actual implementation of the Rockland County Jail Grievance system has the appearance of barring Federal Claims against County of Rockland employees by its detainees.

Defendants assert that plaintiffs failed to exhaust their Administrative Remedies under the Prison Litigation Reform Act.  As set forth below, Rockland County Jail's employees did not provide  the plaintiffs Kidd and Vasquez with a  written form within five days of the incident, and twenty four hours of the request for a written form.

The Memorandum written by the  Chairman of the New York State Commission of Corrections, written approximately twenty-two months before this incident, specifically does not require detainees to engage in informal procedures in order to obtain a written Grievance  form.  Rockland County Jail was obligated pursuant to State regulations to make the form available within twenty four hours of the inmate's request.  Rockland County Jail's failure to do so is contrary to New York State Regulations.

Kenneth Kidd states in his affidavit that he went through an informal Grievance Process.  When he was not satisfied with the result, he asked for the Grievance Form

from the Lieutenant on the night shift. He was not given the form. [Plasse Dec. Ex. C.
Kidd Aff. Par.23]

The failure to provide the Plaintiff with this form has the appearance of an effort
to impede the Grievance Process. The Chairman's Memorandum in effect when this
incident occurred, clearly stated that the facility was obligated to provide the written
Grievance form within twenty four hours after it was requested, irregardless of the
existence of an informal grievance process.   Yet the County of Rockland's instructions
to inmates, in effect on February 1, 2006, failed to include the Chairman's Directive.
Rockland County Jail's employees failed to give the form to Kenneth Kidd within twenty
four hours of his request.

Kenneth Kidd stated that a Lieutenant came to his cell at 3:00 a.m. to give him the
Grievance form. [Plasse Dec. Ex C Kidd Aff. Par. 23] The law states that the Jail is to
provide him with the form within twenty four hours.  The Chairman's Memorandum
clearly states: "[A]rrangments must be made for sufficient access to the forms by facility
staff not only during the normal business days, but on weekends and holidays as well".
[Plasse Dec. Ex. F] It is respectfully submitted that the Chairman did not intend that
access to these forms is at the jail's discretion.

Kin Vasquez also states in his sworn Affidavit that he attempted to exhaust his
Administrative Remedies by going through the informal Grievance Process.  Kin
Vasquez attempted to utilize the informal Grievance Procedure.   Vasquez was  provided
with the response that the matter was being taken care of.  [Plasse Dec. Ex. B, Vasquez
Aff. Pars 16-21] Once he was notified by staff that the matter was resolved that
technically would end the exhaustion of his Administrative Remedies.   The Grievance

16

process set forth by the Rockland County Jail is vague about the procedure once the matter is investigated informally. It basically states that if the matter is not resolved, that the inmate must go up the chain of command informally prior to obtaining a Written Form. The Jail procedures are totally silent as to what happens if the matter is being processed via the informal process. If an inmate is told during the informal process, verbally, that the matter is being taken care of, would that in effect, be the end of his informal procedure? The information provided to the inmates is unclear.

By virtue of the foregoing, the defendant should be equitably estopped from using the Exhaustion of Administrative Remedies as a defense. The grievance system in effect was contrary to State regulations. The Jail investigated the incident following complaints by inmates. Captain Conjura stated in his Affidavit that he was contacted by Inmate Dorian Epps. Captain Conjura knew about the distribution of the pamphlets immediately. Captain Conjura investigated the matter. On April 16, 2007, after being on vacation from March 29, 2007 to April 13, 2007, he furthered his investigation by interviewing inmates, including the plaintiffs named herein. [Conjura Affidavit Pars 4-12; Mahon Dec. Ex. "H"]

Assuming arguendo, that this Court finds that the Grievance procedure at Rockland County Jail is not a nullity, then in the alternative, the defendants should be estopped from asserting plaintiff's non-compliance as a defense due to their own conduct in failing to follow the regulations of the State of New York and provide detainees with the formal grievance form within twenty four hours of the request.

Defendants had notice of this claim. "The PLRA's exhaustion requirement is designed to 'afford [c]orrection officials time and opportunity to address complaints

internally before allowing the initiation of a federal case. Porter v. Nussle, 534 U.S. 516, at 524-25 (2002).  As such, it is not dissimilar to the rules of notice pleading, which prescribe that a complaint 'must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it.' Freedom Holdings, Inc., v. Spitzer, 357 F.3d 205, 234 [2nd Cir. 2004].

Plaintiffs provided the County of Rockland Notice by virtue of the  complaints processed through its special investigation and the disciplinary appeal process of Chaplain Clapp.  These processes provided Rockland County with sufficient notice of the events underlying this claim.   [Conjura Affidavit Pars 4-12; Mahon Declaration Ex. "G"]

"The PLRA's exhaustion requirement is designed to 'afford  [c]orrection officials time and opportunity to address complaints internally before allowing the initiation of a federal case. Porter v. Nussle, 534 U.S. 516, at 524-25 (2002).  As such, it is not dissimilar to the rules of notice pleading, which prescribe that a complaint 'must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it.' Freedom Holdings, Inc., v. Spitzer, 357 F.3d 205, 234 [2nd Cir. 2004].

In Giano, supra., the Court found that New York Department of Correctional Services ("NY DOCS") regulations governing grievance procedures were unclear. The Court  held that, in the particular circumstances of that case, it was reasonable  for the plaintiff to have raised his complaints through the disciplinary appeals process rather than by filing a separate grievance due to the complicated rules and regulations for filing a grievance.

In Johnson v. Testman, 380 F. 3d 691 (2nd Cir 2004) the Court  held "The PLRA's

exhaustion requirement is designed to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. [Citation omitted]. As such, it is not dissimilar to the rules of notice pleading, which prescribe that a complaint 'must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it.' [Citing Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir. 2004). Thus, the Seventh Circuit has held that, if prison regulations do not prescribe any particular content for inmate grievances, 'a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming.' [Citing Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).'

'We believe that this formulation is a sound one. Uncounseled inmates navigating prison administrative procedures without assistance cannot be expected to satisfy a standard more stringent than that of notice pleading. Still, the PLRA's exhaustion requirement does require that prison officials be "afforded . . . time and opportunity to address complaints internally. [Citing Porter, supra., 534 U.S. at 524-25]. In order to exhaust, therefore, inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measure. [Citations omitted]"

Here Captain Conjura states that he was advised of the distribution of the pamphlets on the date it occurred. He spoke with an inmate, Dorian Epps, who told him about the problem. Captain Conjura spoke with Chaplain Clapp the next day. Clapp was charged with Disciplinary Infractions. The information in the Disciplinary Infractions

against Chaplain Clapp and the investigation by Captain Conjura were all attached as Exhibits to Defendants' Motion for Summary Judgment. [Mahon Declaration Exs. G, H, I, J, K]

A copy of the Administrative Law Judge Decision sets forth a complete history of the incident. The Decision sets forth the same facts underlying this incident. It discussed that on March 26, 2007, Reverend Clapp left bundles of the Chick Publications on a table in the housing unit for inmates. The pamphlets cast members of the Islamic faith in a highly unfavorable light. An inmate complained to the Chaplain. Copies of the pamphlets continued to circulate within the jail. Captain Conjura became aware of the pamphlets in late March 2007 and was shocked by the contents, and interviewed six inmates and wrote follow up incident reports to the Chief. [Mahon. Dec. Ex. K, P. 10]

Paul Harris was an imam in 2001 and testified that Chaplain Clapp had a demonstrated prejudice against Muslims. [Mahon Dec. Ex. K, P. 10, 11]

Mohammed Ziaullah was a volunteer in the jail with Islamic Inmates. He stated that Reverend Clapp had an internal motive against Muslims. [Mahon Dec. Ex. K, P. 11]

Anthony Rosco a former inmates stated that the jail's policy of banning the Noble Qur'an was based on the Chaplain's conduct. [Mahon Dec. Ex. K, P. 12]

Gami Mostafa taught Island at the Mosque Center of Rockland County and worked as a volunteer Imam at the County Jail. He stated in 2005 he  filed a complaint against Chaplain Clapp for humiliating Muslims and insulting them. His opinion was the Reverend Clapp was anti-Muslim. [Mahon Dec. Ex. K, P. 12]

Captain Clapp's investigation was no different from what he would have done if the inmates had all filed formal grievances.   Assuming arguendo, that every Muslim

detainee formally grieved Chaplain Clapp's offensive tracts, at some point, wouldn't an official have consolidated all the grievances and investigated all the complaints at the same time? It is respectfully submitted that the investigation by Captain Conjura is no different from what would have been done had a formal grievance been filed.

Defendant should not be able to assert the defense of failure to exhaust under these facts and circumstances. It promulgated a system that was not in accordance with State Regulations. When an inmate attempted to use the system, the Jail wouldn't even give out the forms needed to comply with its rules.

Having failed to comply with the regulations of the State of New York, the County of Rockland should be equitably estopped from raising as an Affirmative Defense Plaintiffs failure to exhaust. The County of Rockland Jail subverted this process. It should not benefit from this conduct.

In conclusion, prison officials were provided in writing with sufficient notice of the factual allegations in this complaint by virtue of the Disciplinary Hearings and the Special Reports prepared by Captain Conjura.

In the event that this Court finds that there are any issues of fact that need to be resolved in analyzing the issue that Plaintiffs failed to exhaust their Administrative Remedies, it is respectfully requested that this Court hold a limited fact finding hearing.

## II. SUFFICIENT ISSUES OF FACT EXIST TO PRECLUDE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE DELIBERATE INDIFFERENCE CLAIM

Summary judgment will be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

585-87 (1986). Summary judgment is inappropriate if, resolving all ambiguities and drawing all inferences against the moving party, there exists a dispute about a material fact "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To defeat a motion for summary judgment, however, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., supra., 475 U.S. at 586. There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. Anderson, supra., 477 U.S. at 249.

To state a Section 1983 claim, plaintiff must allege a violation of his constitutional or statutory rights by a person acting under the color of state law. 42 U.S.C. § 1983. To be liable under § 1983, the defendant must have been personally involved in the alleged violation. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994)

Reverend Clapp states that she was employed at the time of this incident by the County of Rockland as Jail Chaplain since 1994. [Clapp Par 3] She was therefore acting under Color of State Law at the time of this alleged incident.

Plaintiffs' religious liberty claim is asserted under both the First Amendment's Free Exercise Clause and § 3 of the RLUIPA. A religious liberty claim requires the prisoner demonstrate "that the disputed conduct substantially burdens his *sincerely held religious beliefs*." Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir.2006 (italics added) (citing RLUIPA, 42 U.S.C. § 2000cc-1(a); Ford v. McGinnis, 352 F.3d 582, 587 (2d Cir.2003) (First Amendment Free Exercise Clause)

"Religious exercise" is defined under the RLUIPA to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). "Section 3 applies if 'the substantial burden [on religious exercise] is imposed in a program or activity that received Federal financial assistance.' " Salahuddin, 467 F.3d at 273 n. 2 (quoting 42 U.S.C. § 2000cc-1(b)(1). "In the prison context, this section sweeps broadly as '[e]very State ... accepts federal funding for its prisons.' Cutter v. Wilkinson, 544 U.S. 709, 716 n. 4 (2005).

Analyzing Plaintiff's claim under the First Amendment, "[t]he Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore ... religious beliefs in accordance with the dictates of their conscience.' " Jackson v. Mann, 196 F.3d 316, 320 (2d Cir.1999) (quoting Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir.1984).

"Treatment that degrades the inmate, invades his privacy, and frustrates the ability to choose pursuits through which he can manifest himself and gain self-respect erodes the very foundations upon which he can prepare for a socially useful life. Religion in prison sub serves the rehabilitative function by providing an area within which the inmate may reclaim his dignity and reassert his individuality." Barnett v. Rodgers,  410 F.2d 995, 1002 (U.S. Ct. App. D.C. 1969).

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person-(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a); Salahuddin, 467 F.3d at 273-74.

The allegations in the Complaint, concerning the distribution of pamphlets, offensive to Muslims, insulting their faith, and portraying them as terrorists, states a claim under the First Amendment. The distribution of these booklets by a County employee in the course of her employment  impinged on existing rights, and was not in any way reasonably related to legitimate objectives.

The pamphlets are on their face, degrading, insulting and derogatory to the Islamic Faith. In addition, the pamphlets argue that Islamic followers should convert to Christianity to be saved.

Kim Vasquez stated that he was sincere in his beliefs, [Plasse Dec. Ex. C, Vasquez Aff. Pars. 11 & 12]. He stated that the pamphlets were distributed by Chaplain Clapp, who told him to read the document.   He stated that Chaplain Clapp, as a general practice, treated the Muslim Inmates different from all the others. [Plasse Dec. Ex. C, Vasquez Aff. Pars 24-32]

Kenneth Kidd also noted his sincere beliefs, and how he was outraged by the pamphlets. He went to speak to the defendant in her office. [Plasse Dec. Ex. B, Pars 11 & 12]. Chaplain Clapp gave him a two page Memoranda equally as offensive to him, as the pamphlets she distributed. [Plasse Dec. Ex. B, Kidd Aff. Par. 12. Plasse Dec. Ex. H]

The document 'Allah the Moon God' provided to Kenneth Kidd by Chaplain Clapp states: "Ghazoli concluded that Islam was not and could not be the truth. But where was the truth?  . . . One day a lady placed a bible in his hands and said, "Read". . . Gradually he realized that this could only be the words of the true God."   Clearly this disparages his religion.

According to Kenneth Kidd, Chaplain Clapp treated the Muslim Inmates

differently – she prohibited the use of the Noble Qu'ran; she didn't provide an Imam to lead services, and she had the services in a room much smaller than the ones used for other religions.  [Plasse Dec. Ex. C, Kidd Aff. Par 34-37] The disparate treatment is alleged to show that Chaplain Clapp had a subjective animosity to inmates who were of the Islamic Faith, and this animosity is evident from the distribution of the Chick Publications, showing Muslims in an extremely unfavorable light.  Chaplain Clapp's past disparate treatment of Muslim inmates demonstrates her subjective  intent.  Evidence of her subjective animosity is relevant to show that she had a history and pattern of totally disregarding her legal responsibility as Religious Advisors.

Defendant Chaplain Clapp's moving papers are insufficient to meet the burden to support a Motion for Summary Judgment.  Chaplain Clapp's affidavit and the exhibits, in fact, set forth evidence supporting the claim that she was deliberately indifferent to the plaintiffs' first amendment rights.

Chaplain Clapp  states in her affidavit that the allegations against her in her Disciplinary Proceeding resulted in a finding of negligence.  The actual charges filed against her consisted of Gross Negligence.

In  Doe v. New York City Department of Social Services, 649 F.2d 134 (2d Cir.1981), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983) the Second Circuit stated that deliberate indifference is closely associated to gross negligence:  One is a type of conduct and the other a state of mind.  Nevertheless, the two are closely associated, such that gross negligent conduct creates a strong presumption of deliberate indifference.  Doe, supra., at 142

Chaplain Clapp has produced no evidence that there is no material issue of fact

regarding her deliberate indifference to the religious practices of the plaintiffs.   Rather

she has produced documents which clearly demonstrate that she was deliberately

indifferent to the religious rights of the plaintiffs.

Even assuming arguendo, that she did produce evidence that she was not

deliberately indifferent, the affidavits in opposition clearly set forth that her conduct was

deliberately indifferent to the plaintiffs – that she distributed offensive pamphlets in the

jail and told Kim Vasquez, a practicing Muslim to read it  and in response to Kenneth

Kidd's outrage, she gave him a two page document disparaging his religion further –

these facts clearly set forth that she intentionally distributed offensive tracts, which are

included as Exhibits, in the jail. Testimony that the Noble Quran was not distributed, and

that the services were held in a less than accommodating place, while per se not

constitutional violations, may be indicative of her subjective animosity to Muslims.

A claim deliberate indifference can be met if the actor intentionally disregarded a

duty to act in a certain way.  Consolo v. George, 58 F.3d 791 (1st Circuit 1995) cert.

denied 516 U.S. 1990 (1995).

'Defendants may be held liable under § 1983 if they ... exhibited deliberate

indifference to a known injury, a known risk, or a specific duty, [underlining added for

emphasis] and their failure to perform the duty or act to ameliorate the risk or injury was

a proximate cause of plaintiff's deprivation of rights under the Constitution.' Ortiz v.

Goord, 276 Fed. Appx. 97, 2008 W.L. 1945912 [2nd Cir. 2008] citing Doe v. New York

City Dep't of Social Servs., 649 F.2d 134, 145 (2d Cir.1981)

Chaplain Clapp  stated that her responsibilities were to distribute religious

materials and literature to the inmate population.   Therefore she admits that she had a

duty [underlining added for emphasis] to distribute religious materials and literature to the inmate population. [Clapp Par 4]   She stated that over the years she has received religious tracts from Chick Publications.  She states that on March 26, 2007, she brought the religious tracts from Chick Publications. She admits that she had a duty to distribute religious tracts, she stated that she distributed the offensive religious tract, and in derogation of her duty, as Jail Chaplin for over thirteen years, she didn't read the tracts. If her duty was to distribute religious literature, it would also be her duty to review the literature prior to its distribution. Her admission that she didn't read the tracts in and of itself constitutes deliberate indifference to her responsibilities.

Defendant Clapp had a duty to distribute materials. Chaplain Clapp didn't check on the materials prior to the distribution.  This was a breach of her duty as religious advisor.  As a result, the plaintiffs' religion was disparaged.   The pamphlets [Ex. D & E] disparage the Muslim religion. The pamphlets contain offensive tracts.  The pamphlets seek to convert Muslims to Christianity.

Reverend Clapp must have been familiar with the nature of Chick Publications because she stated in her affidavit that she has distributed Chick literature before.

Wikipedia states the following in regard to Chick Publications:

"Chick Publications is an American publishing company founded and run by Jack T. Chick which produces and markets Protestant fundamentalist pamphlets, DVDs, VCDs, videos, books, and posters. Chick Publications' best-known products are Chick tracts, which are comic tracts that are available in nearly 100 languages. Arguably all of its products promote and seek to win converts to Christian fundamentalism. While some tracts express views that are generally accepted within Christian theology, e.g. the Incarnation of Christ,[3] other tracts have controversial views and criticisms against cultures, religions and theological concepts. Chick's "espous[ing] a variety of hateful

doctrines" have moved the Southern Poverty Law Center to label the organization as a hate group. Wikipedia Web Site on Chick Publications.

Clearly Chaplain Clapp must have been aware of the controversial nature of all Chick Publications prior to distributing these specific tracts, and if not, the breach of her duty to distribute religious literature is even more apparent by her reckless distribution of literature from a hate group.

By virtue of the foregoing, there clearly exist questions of fact as to whether or not Chaplain Clapp was deliberately indifferent to the plaintiffs.

<u>II. QUALIFIED IMMUNITY IS NOT A DEFENSE</u>

The standards of Qualified Immunity are well settled. A defendant is entitled to it if [a] defendants' actions did not violated clearly established law, or [b] it was objectively reasonable for the defendants to believe that their actions did not violate such laws. Anderson v. Creighton, 482 U.S. 635, 641, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 [1987].

Government officials performing discretionary functions enjoy qualified immunity and are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). "As a general rule, [state actors] are entitled to qualified immunity of (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir. 1994).

If plaintiff's allegations are deemed to be true, that the defendant Chaplain Clapp was deliberately indifferent, distributing offensive religious material to practicing

Muslim, in derogation to her duties as a Correction Officer and Religious Advisor, then

clearly those actions are not subject to qualified immunity.

## **CONCLUSION**

**WHEREFORE** it is respectfully requested that this Court deny defendant's

Motion for Summary Judgment, together with such other and further relief as to this

Court seems just and proper.

DATED:      January 4, 2011
             New York, New York

                                     Respectfully submitted,

                                     ANDREW F. PLASSE, P.C.
                                     By:
                                     ANDREW F. PLASSE [AP-3679]
                                     Attorney for the Plaintiff
                                     Office and P.O. Address
                                     352 7th Avenue, Suite 1242
                                     New York, NY 10001
                                     (212) 695-5811

**DECLARATION OF SERVICE BY MAIL**

STATE OF NEW YORK        )
COUNTY OF NEW YORK   ) ss.:

      I, ANDREW F. PLASSE, pursuant to 28 U.S.C. Section 1746, declare that the following is true and correct, under penalties of perjury:

      I am an attorney duly admitted to practice law in the Southern  Distinct of New York, am not a party to this action, am over eighteen years of age, and reside in the State of New York.

      On January 5, 2011, I served the Annexed MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 56 by depositing a true copy hereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Post Office for delivery within New York State, addressed to each of the following persons at the last known address set forth after each name:

Richard M. Mahon [RM – 9260]
Tarshis Catania Liberth Mahon & Millligram, PLLC
Attorneys for the Defendants
One Corwin Court
PO Box 179
Newburgh, NY 12550

DATED:     January 5, 2011
             New York, New York

                                     _____
                                      ANDREW F. PLASSE