UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

GREGORY GORDON, KIN VASQUEZ and
KENNETH KIDD,

                        Plaintiffs,

     - against –

THE COUNTY OF ROCKLAND and REV. TERESA
DARDEN CLAPP, in her individual and official capacity
as a Correction Officer employed by the County of Rockland,

                        Defendants.

-----------------------------------------------------------------------X

**REPLY MEMORANDUM
OF LAW**

Civil Action No. 10 Civ. 1549
(RPP)

---

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF SUMMARY JUDGMENT

---

**TARSHIS, CATANIA, LIBERTH
MAHON & MILLIGRAM, PLLC**
*Attorneys for Defendants*
**THE COUNTY OF ROCKLAND and
REV. TERESA DARDEN CLAPP**
One Corwin Court, P.O. Box 1479
Newburgh, New York 12550
Tel. No. 845-565-1100

Of Counsel:

Richard M. Mahon, II, Esq.
Rebecca Baldwin Mantello, Esq. (on the brief)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................... ii

POINT I

ALL CLAIMS ASSERTED AGAINST REVEREND CLAPP IN HER OFFICIAL
CAPACITY SHOULD BE DISMISSED AS A MATTER OF LAW AS PLAINTIFFS
HAVE FAILED TO ESTABLISH A CUSTOM OR POLICY ON THE PART OF THE
COUNTY OF ROCKLAND............................................................... 1

POINT II

ALL CLAIMS ASSERTED AGAINST REVEREND CLAPP IN HER PERSONAL
CAPACITY SHOULD BE DISMISSED AS HER ACTIONS AMOUNTED TO
NOTHING MORE THAN MERE NEGLIGENCE WHICH DOES NOT RISE TO
THE LEVEL OF A CONSTITUTIONAL VIOLATION................................ 6

CONCLUSION....................................................................... 14

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

# TABLE OF AUTHORITIES

Anderson v Liberty Lobby, Inc., 477 US 242 (1986)................................... 7

Anthony v City of New York, 339 F3d 129 (2d Cir 2003)............................ 5

Bryant v Maffucci, 923 F2d 979 (2d Cir 1991)........................................ 5, 10

Campbell v Secretary of Health & Human Servs., 69 Fed Cl 775 (2006).............. 11

Crispin v Christian Audigier, Inc., 717 F Supp 2d 965 (CD Cal 2010)................ 11

Cruz v Beto, 405 US 319 (1972)......................................................... 3

Davidson v Davis, 1995 WL 60732 (SD NY 1995)..................................... 3

Decker v Campus, 981 F Supp 2d 851 (SD NY 1997).................................. 1

Edwards v City of New York, 2009 WL 2596595 (SD NY 2009)...................... 10

Fahle v Braslow, 913 F Supp 145 (ED NY 1996), aff'd 111 F3d (2d Cir 1997)...... 5

Guarneri v Hazzard, 2010 WL 1064330 (ND NY 2010)................................ 3, 8, 12

Hawkins v New York State Dept. of Correctional Servs., 2008 WL 2019655
(ND NY 2008)............................................................................ 10

Hourihan v Lafferty, 58 F Supp 2d 10 (ND NY 1999)................................. 5, 10

Johnson v Newton, 2007 WL 778421 (ND NY 2007)................................... 12

Kentucky v Graham, 473 US 159 (1985)................................................ 1

Lipton v County of Orange, NY, 315 F Supp 2d 434 (SD NY 2004)................... 2, 3

Monell v New York City Dept. of Soc. Servs., 436 US 658 (1978)..................... 1

Muhammad v City of New York Dept. of Correction, 904 F Supp 161 (SD NY 1995)   3

Odom v Dixion, 2008 WL 466255 (WD NY 2008)...................................... 10, 12, 14

Patterson v Coughlin, 761 F2d 886 (2d Cir 1985), cert. denied 474 US 1100 (1986)   6

Pressley v Green, 2004 WL 2978279 (SD NY 2004).................................... 3

Rainey v Grand Casinos, Inc., 47 So3d 1199 (Miss App 2010)........................ 11

ii

Ramsey v Goord, 661 F Supp 2d 370 (WD NY 2009)…………………………… 12

Riccuiti v New York City Tr. Auth., 941 F2d 119 (2d Cir 1991)…………………... 2

Robinson v Sarreck, 1993 WL 427416 (SD NY 2010)…………………………….. 5

Rothenberg v Daus, 2010 WL 3860425 (SD NY 2010)…………………………… 1

Sostre v McGinnis, 334 F2d 906 (2d Cir 1964), cert denied 379 US 892 (1964)….. 4

Sutton v Tompkins County, 617 F Supp 2d 84 (ND NY 2007)…………………….. 6

Tafari v Annets, 2008 WL 2413995 (SD NY 2008), adopted by 2008 WL 9449372 (SD NY 2008), aff'd 363 Fed Appx 80 (2d Cir 2010), cert. denied 2010 WL 165961 (2010)……………………………………………………………………………6, 7, 10, 13

Young v Sully, 1993 WL 88144 (SD NY 1993)…………………………………… 10, 14

iii

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479   •   NEWBURGH, N.Y. 12551   •   (845) 565-1100

## POINT I

## ALL CLAIMS ASSERTED AGAINST REVEREND CLAPP IN HER OFFICIAL CAPACITY SHOULD BE DISMISSED AS A MATTER OF LAW AS PLAINTIFFS HAVE FAILED TO ESTABLISH A CUSTOM OR POLICY ON THE PART OF THE COUNTY OF ROCKLAND

Because plaintiffs cannot sustain a § 1983 claim against the County, there is no viable

claim against Reverend Clapp in her official capacity.

> "Personal-capacity suits seek to impose personal liability upon a
> government official for actions he takes under color of state law. Official-
> capacity suits in contrast, 'generally represent only another way of
> pleading an action against an entity of which an officer is an agent.' As
> long as the government entity receives notice and an opportunity to
> respond, an official-capacity suit is, in all respects other than name, to be
> treated as a suit against the entity. It is *not* a suit against the official
> personally, for the real party in interest is the entity. Thus, while an award
> of damages against an official in his personal capacity can be executed
> only against the official's personal assets, a plaintiff seeking to recover on
> a damages judgment in an official-capacity suit must look to the
> government entity itself." (Kentucky v Graham, 473 US 159, 165-166
> [1985], quoting Monell v New York City Dept. of Soc. Servs., 436 US
> 658, 690 n. 55 [1978] [emphasis in original][internal citation omitted]; see
> Rothenberg v Daus, 2010 WL 3860425 *17 [SDNY 2010]; Decker v
> Campus, 981 F Supp 2d 851, 861 [SD NY 1997]).

"On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the

official, acting under color of state law, caused the deprivation of a federal right. More is

required in an official-capacity action, however, for a governmental entity is liable under § 1983

only when the entity itself is a 'moving force' behind the deprivation, thus, in an official capacity

suit the entity's 'policy or custom' must have played a part in the violation of federal law" (see

Kentucky v Graham, 473 US at 166 [emphasis in original]).

Here, the allegations against the County and Reverend Clapp primarily involve a single

isolated incident in which Rev. Clapp inadvertently distributed the subject tracts, which remained

in circulation about the inmate population for a few days. This singular incident, even when

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

taken together with plaintiffs remaining allegations concerning use of the Koran, availability of an imam, and the location for prayer services, does not amount to a custom or policy on the part of the County designed to deprive plaintiffs of their constitutional rights nor does it constitute a substantial burden on plaintiffs' religious rights.

The plaintiffs have voluntarily withdrawn all claims asserted against the County of Rockland [see Plasse Declaration, paragraph 10]. Defendants submitted evidence which establishes that the County did not have a custom or policy to deny the religious rights of plaintiffs. The plaintiffs have submitted nothing more than conclusory and unsubstantiated allegations that the County had a custom or policy to deprive them of their constitutional rights. Furthermore, plaintiffs have failed to set forth a triable issue of fact demonstrating that their constitutional rights were substantially burdened.

## A.    Distribution of Subject Tracts

"[F]or plaintiff's claims of custom or policy to survive summary judgment review, there necessarily must be evidence of the complained-of activity by defendants in similar circumstances outside the present case" (Lipton v County of Orange, NY, 315 F Supp 2d 434, 453 [SD NY 2004]).   Plaintiffs have failed to set forth any evidence or facts pointing to any other instance in which Rev. Clapp or any other County employee distributed literature in the prison which was inflammatory to Muslims. Nor do plaintiffs set forth facts, except in conclusory fashion, of complained of activities outside of the six week time frame alleged in the complaint.

This single incident, conducted by a subordinate employee, which was timely addressed by the Sheriff's Department does not constitute a custom or policy sufficient to establish a violation of plaintiffs' rights under §1983 (see Riccuiti v New York City Tr. Auth., 941 F2d 119,

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

123 [2d Cir 1991]; Lipton v County of Orange, NY, 315 F Supp 2d at 453; Pressley v Green,

2004 WL 2978279, *5 [SD NY 2004]).

### B.    Hiring of an Imam

Specifically, the plaintiffs allege that "the County of Rockland failed to hire anyone to

lead the Muslim Services in an effort to discourage and hinder said religious observance" [see

Ex. "A," paragraph 23].   As set forth in the affidavit of Captain Conjura, the County lacked the

budgetary funds to hire an imam during the time period in the complaint [see Conjura Aff. at

page 5-6; Ex. "K" at 10].   Contrary to the speculative allegations contained in the affidavit of

plaintiff Kenneth Kidd, that "after the problem with Rev. Clapp was in the media, suddenly the

jail has money to hire an Imam. . .," the County's budgetary constraints remained the same; a

volunteer imam was located and engaged to provide services to Muslim inmates [see Conjura

Aff. at page 5-6].   Of note, plaintiffs do not dispute defendants' contention that despite the

absence of an imam, Muslim prayer services continued uninterrupted and were facilitated by

plaintiff Kenneth Kidd, as spiritual leader among the Muslim inmate population [see Plaintiffs'

Ex. "B" and "C"].   The lack of an imam during the six week time period alleged in the complaint

does not constitute a substantial burden on plaintiffs constitutional rights nor does it establish a

custom or policy on the part of the County to deprive plaintiffs of their constitutional rights; and

as such, plaintiffs complaint should be dismissed (see Cruz v Beto, 405 US 319, 322 n. 2 [1972];

Guarneri v Hazzard, 2010 WL 1064330, at *18 [ND NY 2010]; Davidson v Davis, 1995 WL

60732, at *5-6 [SD NY 1995]; Muhammad v City of New York Dept. of Correction, 904 F Supp

161, 189 [SD NY 1995]).

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

### C.    Muslim religious services within the Jail

Even assuming the allegations in the plaintiffs' complaint are true, plaintiffs have failed

to establish, as a threshold matter, that the inconvenience of having prayer services in the

barbershop during the six-week period alleged in the complaint was a substantial burden of their

religious rights or constituted a custom or policy on the part of County to deprive plaintiffs of

their constitutional rights (see Guarneri v Hazzard, 2010 WL 1064330, at *17).  Again, the

plaintiffs do not dispute defendants' contention that during the time period alleged in the

complaint Muslim prayer services continued uninterrupted and were facilitated by plaintiff

Kenneth Kidd, as spiritual leader among the Muslim inmate population.

### D.    Use of the Noble Koran

Plaintiffs do not assert a direct allegation against the County regarding the use of the

Koran.  Specifically, plaintiffs allege "From March 26, 2007 to May 7, 2007, Rev. Teresa

Darden Clapp refused to permit the plaintiffs from using the Quran in the Rockland County Jail."

Plaintiffs do not dispute that Rev. Clapp distributed jail approved Korans to the inmate

population in accordance with her responsibilities [see Plaintiffs' Ex. "B" and "C"].  Moreover,

as a threshold matter, plaintiffs do not set forth any proof, other than plaintiffs' conclusory

assertions that the use of the jail approved translation of the Koran instead of the Noble Koran

constitutes a substantial burden on their religious beliefs (see e.g. Sostre v McGinnis, 334 F2d

906, 911 [2d Cir 1964], cert. denied 379 US 892 [1964] [recognizing that prisons may

circumscribe religious content by rules and regulations which will permit the authorities to

maintain discipline in the prison and failing to permit prison officials do to so "would be to

compel the prison officials to permit inmates to purchase and disseminate in the prison literature

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479   •   NEWBURGH, N.Y. 12551   •   (845) 565-1100

advocating and encouraging the very conduct which the prison authorities may lawfully

suppress"]).

To the extent that the plaintiffs have withdrawn all claims as against the County and have

not raised a material issue of fact to refute the County's prima facie establishment that it did not

have a custom or policy to deny the religious rights of plaintiffs, all claims asserted against the

County and against Reverend Clapp in her official capacity should be dismissed as a matter of

law (see Anthony v City of New York, 339 F3d 129, 140 [2d Cir 2003][granting summary

judgment and dismissing plaintiffs §1983 claims asserted against the City and police officers in

their official capacities where plaintiff failed to establish an official policy or custom by the

City]; Bryant v Maffucci, 923 F2d 979, 986 [2d Cir 1991] [granting summary judgment

dismissing plaintiff inmate's § 1983 claims against Commissioner of County Department of

Corrections, and others, in their official capacities, to recover for inability to obtain an abortion

in 24th week of pregnancy, where inmate failed to set forth any evidence that this single isolated

incident did not constitute a custom or policy to deny her right to due process]; Robinson v

Sarreck, 1993 WL 427416, *3 [SD NY 2010][granting summary judgment dismissing plaintiff

inmate's §1983 claims against defendant sheriff, jail administrator and doctor, in their official

capacities, where plaintiff failed to establish that County had a custom or policy to deprive

inmates of medical treatment]; see also Hourihan v Lafferty, 58 F Supp 2d 10, 13 [ND NY

1999]; Fahle v Braslow, 913 F Supp 145, 151 [ED NY 1996], aff'd 111 F3d 123 [2d Cir 1997]).

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

## POINT II

### ALL CLAIMS ASSERTED AGAINST REVEREND CLAPP IN HER PERSONAL CAPACITY SHOULD BE DISMISSED AS HER ACTIONS AMOUNTED TO NOTHING MORE THAN MERE NEGLIGENCE WHICH DOES NOT RISE TO THE LEVEL OF CONSTITUTIONAL VIOLATIONS.

Plaintiffs' allegations regarding the hiring of an imam are made specifically against the County and not against Rev. Clapp in her personal capacity; as such, Rev. Clapp is entitled to summary judgment on this issue. Plaintiffs' complaint does not make a specific allegation against Rev. Clapp regarding the alleged holding of prayer services in the barbershop; nonetheless, Rev. Clapp has established her prima facie entitlement to judgment on this issue and plaintiffs have failed to raise a triable issue of fact. In their complaint, as against Rev. Clapp specifically, plaintiffs allege that she (1) refused to permit plaintiffs to use their Korans; and (2) repeatedly and continuously distributed two tracts. Rev. Clapp has established her prima facie entitlement to judgment on these two issues and plaintiffs have failed to raise a triable issue of fact.

To recover under 42 U.S.C. §1983, a plaintiff must establish (1) deprivation or denial of a constitutional right (2) by a person acting under the color of state law (see Sutton v Tompkins County, 617 F Supp 2d 84, 92 [ND NY 2007], citing Patterson v Coughlin, 761 F2d 886, 890 [2d Cir 1985], cert. denied 474 US 1100 [1986]).

"To defeat a summary judgment motion, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. Instead, the non-moving party must set forth specific facts showing that there is a genuine issue for trial" (Tafari v Annets, 2008 2413995, *9 [SD NY 2008], adopted by 2008 WL 9449372 [SD NY 2008], aff'd 363 Fed Appx 80 [2d Cir 2010], cert. denied 2010 WL 1652961 [2010]). "In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to

6

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

determine whether there exists any disputed issue of material fact. To evaluate a fact's

materiality, the substantive law determines which facts are critical and which facts are irrelevant.

While 'disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or

unnecessary will not be counted'" (id., quoting Anderson v Liberty Lobby, Inc., 477 US 242,

248 [1986]).

## A.     Hiring of an Imam

Plaintiffs do not allege in their complaint that Rev. Clapp violated their religious rights as

it pertains to the hiring of an imam [see Ex. "A"]. Moreover, Rev. Clapp, as an employee of the

County of Rockland, could not hire an imam [see Ex. "K" at page 10, 13]. No claim being

asserted against Rev. Clapp in her personal capacity on this issue, and Rev. Clapp having no

personal involvement in the hiring of an imam, she is entitled to summary judgment as a matter

of law on this issue.

## B.     Muslim religious services within the Jail

Plaintiffs do not specifically assert an allegation as against Rev. Clapp regarding holding

of religious services in the barbershop [see Ex. "A"]; nonetheless, Rev. Clapp has met her prima

facie burden and plaintiffs have failed to raise a triable issue of fact. As set forth in the affidavits

of Captain Conjura and Rev. Clapp, all religious services were held in Multipurpose Room No.

2, and no religious services would be held in the barbershop unless Multipurpose Room No. 2

was unavailable because some other jail program was scheduled at that time. Moreover, from a

logistical standpoint, Rev. Clapp was suspended as of April 12, 2007 [see Clapp Aff.; Ex. "F"],

and would have had no involvement whatsoever in the location of prayer services for the

remaining time period alleged in the complaint. Furthermore, even assuming the allegations in

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

the plaintiffs' complaint are true, plaintiffs have failed to establish, as a threshold matter, that any inconvenience from having prayer services in the barbershop during the six-week period alleged in the complaint was a substantial burden on their religious rights (see Guarneri v Hazzard, 2010 WL 1064330, at *17). Again, the plaintiffs do not dispute defendants' contention that during the time period alleged in the complaint, Muslim prayer services continued uninterrupted and were facilitated by plaintiff Kenneth Kidd, as spiritual leader among the Muslim inmate population [see Conjura Aff.; Clapp Aff; Plaintiffs' Ex. "B" and Ex. "C"]. Reverend Clapp has established her prima facie entitlement to judgment as a matter of law on this issue and plaintiffs have failed to raise a triable issue of fact sufficient to defeat summary judgment.

### C.     Use of the Koran

Plaintiffs allege that Rev. Clapp refused to permit the plaintiffs use of the Koran from March 26, 2007 through May 7, 2007 [see Ex. "A"]. Again, from a logistical standpoint, Rev. Clapp was suspended from her employment on April 12, 2007 [see Clapp Aff.; Ex. "F"] and, therefore, could not have denied plaintiffs use of their Korans during the remaining time period in the complaint. Moreover, as set forth in the affidavits of Captain Conjura and Rev. Clapp, Rev. Clapp was not involved in and had no decision-making authority with regard to the administrative policy involving distribution of the Noble Koran [see Conjura Aff.; Clapp Aff.; Ex. "K" at 13]. Rev. Clapp, in her personal capacity, did not deprive the plaintiffs of use of the Noble Koran or of the jail approved translation [see Clapp Aff.]. Rev. Clapp distributed approved translations of the Koran to the inmate population in accordance with her responsibilities [see Clapp Aff.]. In their supporting affidavits in opposition, neither Kenneth Kidd nor Kim Vasquez dispute that Rev. Clapp distributed jail approved Korans to the inmate population in accordance with her responsibilities [see Plaintiffs' Ex. "B" and Ex. "C"]. Plaintiff

8

Vasquez's conclusory statements regarding the content of and the administrative policy

regarding the Noble Koran have no bearing on the claim alleged against Rev. Clapp in her

personal capacity.   Moreover, Plaintiff Kidd's affidavit states nothing more than conclusory and

unsubstantiated allegations that Rev. Clapp interfered with his ability to purchase the Koran.  He

does not state when he attempted to purchase the Koran or in what manner Rev. Clapp

"interfered" with him "trying to get the documents needed to buy the holy texts" [see Plaintiffs'

Ex. "C" at paragraph 35].   Furthermore, whether a former inmate personally held Rev. Clapp

responsible for the Jail's policy is of no relevance [see Plaintiffs' Memorandum of Law at page

20].   The fact remains that plaintiffs have failed to put forth any competent evidence to dispute

that Rev. Clapp had no involvement in the administrative policy or that she, in fact, failed to

permit plaintiffs use of their Korans.  Based on the foregoing, Rev. Clapp has established her

prima facie entitlement to judgment as a matter of law on this issue and plaintiffs have failed to

set forth a triable issue of material fact sufficient to defeat summary judgment.

### D.   Distribution of the Subject Tracts

Contrary to plaintiffs' contentions, Rev. Clapp has established her prima facie entitlement

to judgment as a matter of law on the issue of the distribution of the subject tracts.  Plaintiffs'

attempts to distort and mischaracterize both Rev. Clapp's statements in her supporting affidavit

and the findings of Arbitrator Paul Bailey do not create a triable issue of fact sufficient to defeat

summary judgment.  Moreover, many of plaintiffs' allegations, raised for the first time in their

supporting affidavits and not contained in the complaint, are equally unavailing.

The affidavit of Rev. Clapp together with the other exhibits submitted in support of her

motion for summary judgment establish that the distribution of the two subject tracts was a

single isolated incident during which the subject tracts circulated in the jail for two or three days

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

and which amounted to nothing more than mere negligence and an administrative error on her part.

"Plaintiffs challenging asserted deprivations of due process under 42 U.S.C. § 1983 must demonstrate, inter alia, that the defendant acted with more than mere negligence" (Hourihan v Lafferty, 58 F Supp 2d at 15). Negligence will not carry a §1983 claim against a defendant in his or her individual capacity (see e.g. Bryant v Maffucci, 923 F2d at 983-984; Edwards v City of New York, 2009 WL 2596595, *2 [SD NY 2009]; Tafari v Annets, 2008 WL 2413995, *17; Young v Scully, 1993 WL 88144, *7 [SD NY 1993]; Hawkins v New York State Dept. of Correctional Servs., 2008 WL 2019655, *5 [ND NY 2008]; Odom v Dixion, 2008 WL 466255, *11 [WD NY 2008]).

Rev. Clapp attests that she did not see or read the subject tracts prior to placing them, together with a number of other religious materials, on tables in two of the prison wings [see Clapp Aff.]. Plaintiffs attempt to create an issue of fact by claiming that because Rev. Clapp had distributed tracts from Chick Publications over the years, she somehow must have known that the subject tracts were contained within the bundles of tracts she distributed on March 26, 2007 [see Plaintiffs' Statement of Material Facts Pursuant to Local Rule 56.1, paragraph 2]. However, the proof before the Court points to the direct opposite conclusion. Rev. Clapp had distributed tracts from Chick Publications for years without a single incident or complaint; that she had distributed tracts from Chick Publications for years does not even remotely establish that she would have known that the subject tracts were within the bundles she distributed on March 26, 2007.

Plaintiffs also rely on the content of an internet "Wikipedia" entry to suggest that "Clearly, Chaplin Clapp must have been aware of the controversial nature of all Chick

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

Publications prior to distributing these specific tracts, and if not, the breach of her duty to

distribute religious literature is even more apparent by her reckless distribution of literature from

a hate group" [see Plaintiffs' Memorandum of Law at page 28].  The "Wikipedia" website entry

is irrelevant, hearsay, unauthenticated, and has no bearing on the issues before the Court (see

Crispin v Christian Audigier, Inc., 717 F Supp 2d 965, 977 n 19 [CD Cal 2010]; Rainey v Grand

Casinos, Inc., 47 So3d 1199, 1204 [Miss App 2010] ["Wikipedia defines itself as 'the free

encyclopedia that anyone can edit.' The articles written in Wikipedia are collaborative and

authored anonymously; thus, any information found on Wikipedia may not be reliable and

should be viewed with skepticism"]; Campbell v Secretary of Health & Human Servs., 69 Fed.

Cl. 775, 781 [2006]).

Rev. Clapp states that in the years that she has worked as Jail Chaplin, she has never once

received a complaint regarding Chick Publication tracts [see Clapp Aff.].  Plaintiffs do not refute

this contention nor do they point to any other instance in which Rev. Clapp distributed religious

materials that were inflammatory to Islam [see Plaintiffs' Ex. "B" and Ex. "C"].  As Rev. Clapp

had not seen or read the subject tracts prior to placing them on the tables, the title or depictions

of the cover of the tracts would not have alerted her to their content [see Plaintiffs' Statement of

Material Facts pursuant to Local Rule 56.1].

While plaintiff Kidd alleges in his affidavit that on March 27, 2007, Rev. Clapp gave him

the two page document attached as plaintiffs' Exhibit "H" and told him that the tracts from Chick

Publications were correct, during Captain Conjura's investigation conducted on April 16, 2007,

when asked if he tried to see Rev. Clapp about the pamphlets, he stated to Captain Conjura that

Rev. Clapp would not see him [see Ex. "H"].

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479  •  NEWBURGH, N.Y. 12551  •  (845) 565-1100

Notably, plaintiff Kidd gave testimony at the disciplinary hearing of Rev. Clapp [see Ex. "K" at pg 12]. Arbitrator Bailey noted that plaintiff Kidd "confirmed that Reverend Clapp never discriminated against him on the basis of his religion or attempted to convert him, and said that she is a fine Chaplin" [see Ex. "K" at pg 12].

Of note, plaintiffs' affidavits raise a number of allegations and/or new theories of liability that were not raised in their complaint; contain hearsay allegations and/or allegations not based on personal knowledge, as well as allegations which are unsubstantiated. For instance, in their complaint, plaintiffs do not allege that any physical altercations occurred between themselves and other inmates [see Ex. "A"]; however, plaintiff Vasquez [see Plaintiffs' Ex. "B"] and plaintiff Kidd [see Plaintiffs' Ex. "C"], now allege that other inmates physically assaulted and/or threatened them in connection with the subject tracts. Captain Conjura attested in his affidavit that other than the incident between inmate Lydell Watts and Rakeen Whatley, no other disputes or incidents were reported in connection with the subject tracts [see Conjura Aff.]. Furthermore, many of plaintiffs "new" allegations have no bearing on whether the isolated incident regarding the distribution of the subject tracts constituted a violation of plaintiffs' constitutional rights by Rev. Clapp in her personal capacity. Factual issues created solely by an affidavit created to oppose a summary judgment motion are not 'genuine' issues of fact" (Odom v Dixion, 2008 WL 466255, *4; see Tafari v Annets, 2008 2413995, *9; see Guarneri v Hazzard, 2010 WL 1064330, *7 ["irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute"]; Ramsey v Goord, 661 F Supp 2d 370, 384 [WD NY 2009] ["Vague assertions supported only by self-serving statements in the nonmoving party's affidavit are insufficient to defeat a properly supported summary judgment motion]; Johnson v Newton, 2007 WL 778421,

TARSHIS, CATANIA, LIBERTH, MAHON & MILLIGRAM, PLLC
P.O. BOX 1479 • NEWBURGH, N.Y. 12551 • (845) 565-1100

\*2 [ND NY 2007] ["The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts"]).

Plaintiffs' are correct in their assertion that Rev. Clapp was *charged* with gross negligence; however, Arbitrator Bailey found Rev. Clapp negligent, not grossly negligent [see Ex. "K" at 15, 19-20]. Nowhere in his opinion does Arbitrator Bailey find or otherwise state that Rev. Clapp acted with gross negligence. Most importantly, Arbitrator Bailey specifically found that "the [County's disciplinary] charges that [Rev. Clapp] intentionally or maliciously brought inflammatory or proselytizing literature into the Rockland County Correctional Center are without merit" [see Ex. "K" at pg 18]. Arbitrator Bailey further noted that "on the issue of discrimination, inmate Kidd and former inmate Hill testified that in their judgment, the employee was a fine Chaplain, and that she never discriminated against them on the basis of their religion" [see Ex. "K" at pg 18]. The disciplinary finding against Rev. Clapp was in no way related to intentionally or maliciously bringing the materials into the jail, or intentionally or maliciously attempting to proselytize or discriminate against Muslim inmates. Arbitrator Bailey found cause to discipline Rev. Clapp because her conduct in distributing bundles of pamphlets put together by civilians without having inspected them first for contraband was a breach of security [see Ex. "K" 15, 19-20].

Here, Rev. Clapp placed a number of religious materials on tables in the Jail. Within these materials were bundles of tracts from Chick Publications, and contained within those bundles were the subject tracts. That Rev. Clapp did not examine or read each of the materials prior to placing them on the tables was not an intentional or malicious act intended to deprive the plaintiffs of their constitutional rights nor was her conduct deliberate indifference. Instead, Rev. Clapp's conduct was, at most, a negligent administrative error (see Tafari v Annets, 2008 WL

13

2413995, *17; <u>Young v Scully</u>, 1993 WL 88144, *7; <u>Hawkins v New York State Dept. of Correctional Servs.</u>, 2008 WL 2019655, *5; <u>Odom v Dixion</u>, 2008 WL 466255, *11).   Plaintiffs' have failed to put forth proof, other than plaintiffs' conclusory statements, that Rev. Clapp's actions were the result of deliberate indifference, gross negligence, or intentional or malicious conduct or otherwise amounted to a violation of their constitutional rights.   Based on the foregoing, plaintiffs' complaint on this issue should be dismissed.

## CONCLUSION

For all of the foregoing reasons, defendants respectfully requests that the Court grant the instant motion for summary judgment and such other and further relief deemed just and proper.

Dated: Newburgh, New York
          January 19, 2011

                                        Respectfully submitted,

                                        TARSHIS, CATANIA, LIBERTH
                                        MAHON & MILLIGRAM, PLLC
                                        *Attorneys for Defendants*
                                        COUNTY OF ROCKLAND and
                                        REV. TERESA DARDEN CLAPP

                              By: _____
                                        RICHARD M. MAHON, II (RM-9260)
                                        One Corwin Court, P.O. Box 1479
                                        Newburgh, New York 12550
                                        Tel. No. 845-565-1100

TO:     ANDREW F. PLASSE, PC
          Attn: Andrew F. Plasse, Esq. (AP-3679)
          Attorney for Plaintiffs
          352 7th Avenue - Suite 1242
          New York, New York 10001
          Tel. No. (212) 695-5811

14